**Mike LOVE, Plaintiff,**

v.

**THE MAIL ON SUNDAY, et al., Defendants.**

**No. CV 05–7798ABC(PJWX).**

United States District Court, C.D. California.

May 10, 2007.

See also 473 F.Supp.2d 1052.

Alfred G. Rava, The Rava Law Firm, San Diego, CA, Philip H. Stillman, Flynn & Stillman, Cardiff, CA, for Plaintiff.

Andrew J. Thomas, Kelli L. Sager, Robyn Aronson, Davis Wright and Tremaine, Barry E. Mallen, Joy T. Teitel, Manatt Phelps & Phillips, Edward A. Ruttenberg, Leopold Petrich & Smith, Los Angeles, CA, Gregory J. Aldisert, Gregory S. Gabriel, Kinsella Weitman Ise Kump Aldisert, Santa Monica, CA, Neville L. Johnson, Nicholas A. Kurtz, Johnson and Rishwain, Beverly Hills, CA, for Defendants.

## ORDER RE: DEFENDANT BRIAN WILSON'S MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Pending before the Court is a Motion for Summary Judgment ("Motion") filed on February 26, 2007, by Defendant Brian Wilson ("Wilson"). Plaintiff Mike Love ("Love") filed an Opposition on March 20, 2007, and Defendant filed a Reply on March 27, 2007. The Court found the matter appropriate for determination without oral argument, and took the matter under submission. *See* Fed.R.Civ.P. 78; Local Rule 7–15. Having considered the parties' submissions and the case file, the Court GRANTS Defendant's Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case has been set forth in several previous orders. *See* Minute Order of July 13, 2006; Minute Order of August 15, 2006; Minute Order of November 16, 2006. Plaintiff Mike Love and Defendant Brian Wilson were principal members of the musical group The Beach Boys. Plaintiff's Complaint alleges that "[t]his action arises out of an international advertising and marketing scheme organized and orchestrated by Brian Wilson and his agents to promote the release of The Beach Boys' long-awaited Smile album, at the expense of the fellow Beach Boy Mike Love and The Beach Boys corporate entity, Brother Records, Inc. ('BRI')." Second Amended Complaint ("SAC") ¶ 1.

In summary, Plaintiff alleges that the Defendants recorded and distributed a promotional CD of re-recorded Beach Boys songs, performed by Wilson, to millions of people without obtaining Plaintiff's authorization. This "Good Vibrations" CD was distributed primarily in the United Kingdom, through the September 26, 2004, edition of the newspaper *Mail on Sunday*, published by Associated Newspapers Limited ("ANL"). The Good Vibrations CD was also allegedly promoted on television and the internet by Bigtime.TV. Plaintiff claims that the distribution of this CD has, among other things, damaged existing and future sales of Beach Boys albums and tarnished the Beach Boys' trademark, which is owned by BRI.

The Court has adjudicated—and in large part, granted—several motions to dismiss and a motion for partial summary judgment. The only claim remaining in Plaintiff's Second Amended Complaint, filed September 5, 2006, is a claim for breach of fiduciary duty against the only remaining defendant, Brian Wilson. Plaintiff claims that Defendant owes him fiduciary duties arising out of an alleged partnership between them dating from their songwriting collaboration in the 1960s.[1] SAC ¶¶ 6, 48–49. Although the exact nature of Defendants' alleged breach is not clear from the SAC, Plaintiff explains in his Opposition to Defendant's Motion that Defendant "was obligated to at a minimum disclose" the use of their co-authored Beach Boys songs and Plaintiff's image on the Good Vibrations promotional CD. Pl.'s Opp'n 7:4–19. Plaintiff contends that by failing to disclose this information, Defendant breached fiduciary duties of care, loyalty, candor, and independence to Plaintiff, and that Defendant put his own personal interests ahead of Plaintiff's interests with regard to the co-authored songs.[2] SAC ¶¶ 50–52.

---

**1.** The SAC also alleges that Defendant owed him fiduciary duties as a director and shareholder of BRI. However, in its November 16, 2006 Minute Order, the Court dismissed those claims. Indeed, Plaintiff acknowledges that the sole remaining basis of his fiduciary duty claim is the alleged partnership between Plaintiff and Defendant. Pl.'s Opp'n 8:18–24.

**2.** Plaintiff contends that Defendant breached fiduciary duties in three others ways. None of these claims has merit. Defendant's "fail[ure] to disclose the misappropriation of

Defendant moves for summary judgment on several grounds, including that (1) no partnership ever existed between Plaintiff and Defendant; (2) if there was a partnership, it did not require either partner to seek the other's consent before re-recording their co-authored songs; (3) any partnership terminated in either the 1960s or in 1991, when Defendant was under a court-ordered conservatorship, which is before the alleged breach took place; and (4) the conduct alleged is not a breach of fiduciary duty.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If, as here, the non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* (citations omitted). Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings.... [T]he adverse party's response ... must set forth *specific facts* showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *See Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

[Plaintiff's] likeness," Pl.'s Opp'n 23:20–23, is not a cognizable breach because in its August 15, 2006 Minute Order, the Court dismissed Plaintiff's claim for misappropriation of his likeness. Plaintiff's two other claims relate to Defendant's failure to disclose to Plaintiff the promotion's use of the "partnership property." However, as discussed below, *see* p. 10, *infra,* it is undisputed that the property used in the promotion—the copyrighted songs—is not owned by any "partnership" between Plaintiff and Defendant. Rather, that property is owned by Rondor. Accordingly, there is no evidentiary basis for Plaintiff's claims that Defendant failed to disclose the use of partnership property and thereby breached fiduciary duties.

*Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* at 248, 106 S.Ct. 2505

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1161 (9th Cir.1992). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Anderson,* at 248, 106 S.Ct. 2505 However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *Anderson,* at 252, 106 S.Ct. 2505

### III. DISCUSSION

 The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal.App.4th 445, 483, 80 Cal.Rptr.2d 329 (1998). Plaintiff claims that the relationship giving rise to Defendant's fiduciary duties is the "partnership" that he alleges exists between himself and Defendant. Thus, in order to prove that Defendant owed Plaintiff fiduciary duties, Plaintiff must first prove that he and Defendant were partners. Although Plaintiff states repeatedly that he and Defendant were partners, there is an absence of evidence to demonstrate that they were partners when the 2004 Good Vibrations promotion took place. Further, even assuming that a partnership existed at some point, there is no evidence that the partnership required either partner to "inform" the other when re-recording their co-authored songs. Accordingly, there is no evidence to support Plaintiff's contention that Defendant's failure to so inform Plaintiff is a breach. Thus, because there is an absence of evi-

dence the Defendant owed Plaintiff fiduciary duties, and that Defendant breached those duties, Defendant is entitled to summary judgment.

### A. Whether there is a Genuine Issue of Material Fact as to the Alleged Partnership between Plaintiff and Defendant.

Plaintiff argues that since 1961, he and Defendant "were partners and co-venturers in the business of writing and performing songs" and "[t]hat partnership continues through the present day, and has never been dissolved by either party." Plaintiff's Statement of Facts in Dispute ("Pl.'s Add'l Facts") 1, 2. In support of this position, Plaintiff contends the December 12, 1994 settlement agreement and consent judgment establish that he and Defendant are partners; he also points to some of his own statements that such a partnership exists.

Defendant argues that the 1994 jury verdict and consent judgment cannot have issue preclusive effect as to the alleged partnership. Defendant further argues that Plaintiff's other evidence cannot establish that the parties were in a "partnership" in the sense of a legal entity giving rise to fiduciary duties between its members. Rather, Defendant contends that he and Plaintiff were songwriting partners or collaborators, and that writing songs together and dividing royalties from those songs does not create a legal partnership.

#### 1. The 1994 Jury Verdict and Consent Judgment.

 Plaintiff contends that the December 12, 1994 jury verdict and consent judgment in the matter *Love v. Wilson,* Case No. 92–4594, filed July 31, 1992, establish that a partnership giving rise to fiduciary duties exists between Plaintiff and Defen-

dant.[3] In previous orders, the Court determined that the 1994 judgment could not have preclusive effect on this issue. However, Plaintiff asks this Court to reconsider its determination and find, under *Arizona v. California*, 530 U.S. 392, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000), that the 1994 judgment must be given preclusive effect so as to establish that a partnership giving rise to fiduciary duties does in fact exist between Plaintiff and Defendant. *See Arizona*, 530 U.S. at 414–415, 120 S.Ct. 2304. Because Plaintiff's request for reconsideration is untimely, the Court declines revisit the issue.

However, even if the jury verdict and settlement agreement could be given preclusive effect in principle, the most that could be established is that a partnership existed at the time at which the conduct that gave rise to the claims in *Love v. Wilson* took place, which is sometime in the 1960s. Indeed, the verdict questions on which Plaintiff bases his argument are "*Were* Brian Wilson and Mike Love partners?" and "*Were* Mike Love and Brian Wilson in a fiduciary or confidential relationship?" *See* Declaration of Philip Stillman In Opposition to Defendant Brian Wilson's Motion for Summary Judgment, ("Stillman Decl.") Ex. 1, "Special Verdict" p. 2 (emphasis added). Clearly, these verdict questions ask whether a partnership existed at some point in the past. These questions do not establish that a partnership existed between Plaintiff and Defen-

dant at the time the jury verdict was entered in 1994, let alone ten years later in 2004 when the Good Vibrations promotion took place, and after Defendant's long hiatus from music-making due to his "significant mental problems" from the late 1960s through at least 1994. (Defendant's Statement of Undisputed Facts, ("UF") 22, SAC ¶ 6, Declaration of Michael E. Love in Support of His Opposition to Motion for Summary Judgment ("Love Decl.") ¶ 10) Accordingly, even if the consent judgment were to have preclusive effect, it does not establish the fact that Plaintiff claims it does. Thus, the 1994 jury verdict and judgment are not issue preclusive as to whether a partnership between Plaintiff and Defendant existed in 2004.

### 2. Whether Other Evidence Creates a Triable Issue as to the Existence of a Legal Partnership.

■ Although Plaintiff offers evidence other than the 1994 judgment to create an ostensible dispute of fact over whether Plaintiff and Defendant were in a partnership in 2004, the dispute is not genuine: Defendant has contended that no such legal partnership exists and points to the lack of evidence of such a partnership, thereby shifting the burden to Plaintiff to come forward with evidence of the partnership. However, the evidence that Plaintiff presents fails to support the existence of such a partnership.

Under the 1994 Uniform Partnership Act[4], "the association of two or more per-

**3.** The Court DENIES Plaintiff's request to take judicial notice of approximately five documents submitted in the *Love v. Wilson* matter. Although Plaintiff acknowledges that he did not submit copies of these documents— which date from 1994—because he was unable to locate them in his files, he did not supply the Court with sufficient or accurate information that would allow the Court to readily locate the documents in its records. More importantly, Plaintiff did not serve these documents on Defense counsel. Accordingly,

Defense counsel's objection to their consideration in this motion is sustained.

**4.** The parties disagree as to whether the pre-1994 Uniform Partnership Act, or the 1994 UPA, governs this dispute. However, under the terms of the 1994 UPA itself, "[o]n and after January 1, 1999, this chapter governs all partnerships." Cal. Corp.Code 16111(b). Accordingly, the 1994 UPA governs this dispute. *See Scottsdale Insurance Co. v. OU Interests, Inc.*, 2005 WL 2893865, 2005 U.S. Dist. LEXIS 37370 (N.D.Cal.2005) (holding

sons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp.Code. § 16202(a). Further, "An association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter." Cal. Corp.Code. § 16202(b). Also, "in determining whether a partnership is formed the following rules apply:"

(1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the coowners share profits made by the use of the property.

(2) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.

(3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received for any of the following reasons:

(A) In payment of a debt by installments or otherwise.

(B) In payment for services as an independent contractor or of wages or other compensation to an employee.

(C) In payment of rent.

(D) In payment of an annuity or other retirement benefit to a beneficiary, representative, or designee of a deceased or retired partner.

(E) In payment of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, pro-

ceeds, or increase in value derived from the collateral.

(F) In payment for the sale of the goodwill of a business or other property by installments or otherwise.

Cal. Corp.Code § 16202(c). Here, Plaintiff simply does not demonstrate that he and Defendant were "carry[ing] on as coowners a business for profit." It is uncontested that Plaintiff and Defendant wrote songs together and, until 1969, co-owned those songs. (UF 10) However, this collaboration and co-ownership of songs does not show that they were engaged as co-owners of a business. *See* Cal. Corp.Code § 16202(c)(1), (2) *supra.* Further, the assets that Plaintiff characterizes as "partnership assets"—the copyrights to their co-authored songs—are not owned by any partnership entity between Plaintiff and Defendant, or even by Plaintiff and Defendant jointly or in common; instead these copyright have been owned by Rondor since 1969. (UF 10) Plaintiff and Defendant are each entitled to royalties based on those copyrights, but there is no evidence that their entitlement to royalties runs through any partnership between them. Rather, Rondor pays royalties directly to Plaintiff and directly to Defendant individually. (UF 10) In short, Plaintiff's evidence cannot satisfy the 1994 UPA's definition of "partnership."

In addition, Defendant has demonstrated that objective indicia of partnership simply do not exist, and that there is no evidence that the parties entered into a partnership orally. Indeed, it is undisputed that Plaintiff and Defendant never signed any type of written partnership agreement (UF 2), that they never had any discussions regarding what would be done with the songs they wrote together

---

that "[a]s of January 1, 1999, the 1994 UPA governs all partnerships regardless of when

they were formed.")

(UF 6), that Plaintiff cannot recall any conversations with Defendant about the need to inform each other regarding the use of the songs (UF 7), that Plaintiff never filed partnership tax returns in connection with the songwriting royalties received from the exploitation of the co-authored songs (UF 9), and that there is no "partnership entity" that currently collects the songwriting royalties for the co-authored songs (UF 10).[5]

The only other evidence Plaintiff offers that he and Defendant have a legal partnership are his own conclusory statements. However, Defendant points to portions of Plaintiff's own deposition in this case, taken January 25, 2007, *negating* Plaintiff's allegation that any such legal partnership exists:

> Q Did you and Brian ever enter into any type of partnership agreement separate and apart from your activities together with the other members of The Beach Boys?
>
> A Well, the term partnership agreement, does that include corporate relationships?
>
> Q Okay. Let me ask it a different way. Did you and Brian ever enter into any type of agreement in which the other members of The Beach Boys were also not parties?
>
> A I don't recall.

Love Depo. 58:16–59:1.

> Q Did you and Brian ever enter into any type of an agreement where you talked about forming a partnership that one of you would manage as opposed to the other?

> A I don't recall any such discussion.

Love Depo. 63:13–17.

> Q Have you and Brian ever sat down and specifically entered into an oral partnership agreement?
>
> A I think we sat down and co-wrote songs together . . . as songwriting partners. That's my understanding of the relationship. [ ] We didn't sit down and get into a formal agreement other than songwriting partnership on particular songs.
>
> Q By partnership you mean collaborating on songs?
>
> A Yeah.

Love Depo. 64:25–65:14.

> Q And have you and Brian ever had a conversation about what would be done with the songs separate and apart from actually writing them?
>
> [ ]
>
> A I don't— I don't recall any conversation like that.

Love Depo. 67:8–14.

Thus, when Plaintiff's allegation that he and Defendant had an oral partnership agreement was put to the test in deposition, Plaintiff denied knowing whether he and Defendant ever had any partnership independent of the other Beach Boys members. Nor does Plaintiff recall having any conversation with Defendant about forming a partnership that one or the other of them would manage. Plaintiff also states that he could not remember having any conversation with Defendant about what would be done with the songs other than actually writing them. Most damaging to Plaintiff's case, when asked directly whether he and Defendant entered into an oral partnership agreement, he simply

---

**5.** Although Plaintiff disputes facts 2, 6, 7 and 10, the Court finds that these facts are not in genuine dispute.

states that they sat down and co-wrote songs together and that they never entered into a formal agreement. Indeed, he characterizes their partnership as a "songwriting partnership" and as "collaborating." Because Plaintiff does not recall any conversation in which he and Defendant entered into their oral partnership, and can provide no other evidence that such a partnership existed, he has failed to create a triable issue of fact on this issue.

Ultimately, Plaintiff's testimony amounts to an admission that the partnership between himself and Defendant was a songwriting "partnership" in the colloquial sense of the term, as opposed to a legal partnership of the sort that gives rise to fiduciary duties. "[T]he term 'partner' frequently is defined with a view to its context." *Southex Exhibitions, Inc. v. Rhode Island Builders Ass'n., Inc.* 279 F.3d 94, 102 (1st Cir.2002) (quoting *Commonwealth v. Campbell,* 415 Mass. 697, 616 N.E.2d 430, 432 (1993) ("[T]he word 'partner' has also been known to describe other kinds of relationships, as diverse as husband and wife or two people who dance together.")). Here, there is no evidence that the "partnership" between Plaintiff and Defendant was anything other than that they were songwriting collaborators.

In his Declaration, signed March 20, 2007—two months after his deposition—Plaintiff attempts to bolster his case by supplying additional evidence that may show a partnership. For example, Plaintiff states in a conclusory manner that "the partnership between [Defendant] and I, originated approximately forty-five years ago, when we first began writing songs together." Love Decl. ¶ 2. Plaintiff then characterizes their relationship as a "songwriting partnership" with simple terms: they "would share the profits from the songs they wrote equally." Love Decl. ¶ 4. Plaintiff also states that the copyright ap-

plications filed by Defendant identifying Plaintiff and Defendant as co-authors is evidence of a legal partnership between them. Love Decl. ¶ 8. Plaintiff also states that the songs were initially owned by an entity owned solely by Defendant, and that Defendant was to ensure that Plaintiff received royalties from the songs.[6] Love Decl. ¶¶ 6, 7. However, Plaintiff notes that "from the late 1960's through at least 1994, Wilson's significant mental problems prevented him from actively participating in the creation of new music," yet he also states that Wilson "never dissociated himself from the songwriting partnership" and that Wilson never gave him notice that their partnership was dissolved or terminated Love Decl. ¶¶ 10, 15. Plaintiff's only evidence that any partnership continued past the 1960s is that he and Defendant "discussed collaborating on other songs on several occasions." Love Decl. ¶ 11.

Again, none of these statements tend to show that the relationship was anything other than a songwriting partnership, let alone a legal partnership that continued through 2004. Even if Plaintiff's declaration contained more specific statements wherein he recalled, for example, conversations he and Defendant had about forming a legal partnership, this would fail to create a triable issue of fact because it would contradict Plaintiff's prior deposition testimony. *See Radobenko v. Automated Equipment Corp.,* 520 F.2d 540, 544 (9th Cir.1975) (stating that a party cannot create his own issue of fact by an affidavit contradicting his prior deposition testimony). Thus, insofar as Plaintiff's declaration consists of statements that are inconsistent with his deposition, such statements do not create "issues this Court could reasonably characterize as genuine; rather, they are sham issues which should not subject the defendants to

---

**6.** As stated above, Rondor has owned the songs since 1969. (UF 10)

the burden of a trial." *Radobenko*, 520 F.2d at 544.

Certainly Plaintiff and Defendant were collaborators, but Plaintiff's mere "belief" that they had a legal partnership and his repeated use of the term "partnership" cannot substitute for evidence that a legal partnership in fact existed. Because no jury could reasonably find, by a preponderance of the evidence presented by Plaintiff, that Plaintiff and Defendant were in a legal partnership in 2004, there is no genuine issue of material fact to submit to a jury and Defendant is entitled to summary judgment.

**B. Whether there is a Genuine Issue of Material Fact as to Defendant's Alleged Breach.**

In the alternative, even if a partnership exists between Plaintiff and Defendant, Plaintiff cannot establish that Defendant breached fiduciary duties arising therefrom. Plaintiff contends that Defendant never informed him of the use of their co-authored songs on the Good Vibrations CD, and that this conduct was a breach of Defendant's fiduciary duties to Plaintiff. Pl.'s Opp'n 24:1–7.

Defendant points out that Plaintiff offered no evidence that he and Defendant were obliged to inform each other of their use of their co-authored songs, or that failing to do so would breach any fiduciary duties:

Q And is it your belief that the settlement agreement entered into in 1994 has a specific provision that requires you and Brian to consult with each other?

A I'd have to look at the document, and I'm not— I can't say other than the fact that the procedure followed since that time by Rondor was to inform one another of the potential use of the song.

Q Okay. But did you and Brian specifically ever have a— separate and apart from whatever procedure Rondor followed, did you and Brian at any time ever[ ] have a conversation where you discussed informing each other with respect to the use of a song?

A I don't remember a conversation directly with Brian on that.

Love Depo. 67:16–68:6. In fact, Plaintiff's own testimony reveals that his expectation that he would be informed any time Defendant used or re-recorded a co-authored song was based on *Rondor's practice* of so informing him, as opposed to any agreement between himself and Defendant. Plaintiff also admits that he re-recorded some of the co-authored songs several times between 1996 and 1998 without first informing Defendant. (UF 15–17, 20) Plaintiff points to no aspect of his relationship with Defendant whereby Defendant was obliged to inform him of the use of the co-authored songs on the Good Vibrations promotion or in any other manner. In short, there is simply no evidence that either Plaintiff or Defendant is under any restriction or subject to any duty to the other concerning re-recording their co-authored songs, the rights to which are owned by Rondor, a third party. Accordingly, Defendant's failure to inform Plaintiff that he used the songs cannot be a breach of fiduciary duty. Thus, no triable issue of fact exists as to Defendant's alleged breach.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby GRANTED.