

**FILED**

Aug 05 2016, 6:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jason Dean Hubbell
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason Dean Hubbell,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

August 5, 2016

Court of Appeals Case No.
03A01-1511-PC-1927

Appeal from the Bartholomew
Circuit Court

The Honorable Stephen R.
Heimann, Judge

Trial Court Cause No.
03C01-1504-PC-1915

**Brown, Judge.**

[1]     Jason Dean Hubbell appeals the denial of his petition for post-conviction relief. Hubbell raises three issues which we consolidate and restate as whether the trial court abused its discretion when it declined to take judicial notice of the record and whether the court denied Hubbell a fair hearing by refusing to obtain his direct appeal record from the Supreme Court Clerk. We reverse and remand.

*Facts and Procedural History*

[2]     The relevant facts as discussed in Hubbell's direct appeal follow:

> Sharon Myers left for work at the Arvin plant early on the morning of May 13, 1997. She never arrived. Another employee of Arvin, Sherry Young, saw a man and a woman leaving the Arvin plant as she arrived at work that same morning. The woman looked similar to Myers. The man had one hand on the woman's neck or back, and the two entered a white van and drove away.

> The police came to the plant later that morning to look for Myers. Young had "mentally" made note of the license plate number and gave the police the number and a description of the van. The police traced the license plate number to a white van owned by Hubbell. Hubbell worked at the Arvin plant with Myers and had called in sick on May 13. Young then identified a picture of the van as the one she had seen that morning, and later that day identified Hubbell when police presented him to her.

> In November 1997, skeletal remains were found in a marsh area in Johnson County and identified as Myers' through dental records. An autopsy showed a fracture in the hyoid bone which, together with the size of a ligature found around Myers' neck, indicated that the cause of death was manual strangulation.

> Acrylic fibers found near the body were consistent with fibers found in Hubbell's van. Grass fragments found in the search of the van were consistent with grass samples from the marsh. The FBI obtained fingerprints from the van and also shot several rolls of film of fingerprints that might or might not be different from the fingerprints taken. No prints from Myers were identified, and the authorities lost the rolls of film.
>
> On August 31, 1998, Hubbell was indicted by a grand jury on the charges of murder and criminal confinement. On September 28, Hubbell filed a notice of alibi, which he amended on October 15. The State did not respond. At trial, the State introduced parts of Hubbell's statements made following a polygraph examination. The State also introduced testimony from a jail inmate that Hubbell admitted the killing to him. Hubbell was convicted of both charges after a four-week jury trial in October and November of 1999. The trial court sentenced him to sixty-five years for murder and ten years for confinement, to be served consecutively.

*Hubbell v. State*, 754 N.E.2d 884, 887-888 (Ind. 2001) (footnote omitted). On direct appeal, Hubbell raised ten issues, and the Indiana Supreme Court affirmed the judgment of the trial court. *Id.* at 887.

[3] On May 24, 2002, Hubbell filed a *pro se* petition for post-conviction relief under cause number 03C01-1504-PC-1915 ("Cause No. 1915"). On May 28, 2002, the court forwarded a copy of the petition to the State Public Defender. The public defender filed an appearance on behalf of Hubbell and later filed a motion to withdraw appearance. In February 2004, Daniel M. Grove filed an appearance on behalf of Hubbell.

[4] Meanwhile, an entry dated September 22, 2003, under the direct appeal cause number indicates that the transcript was released to the public defender's office per request, and an entry dated March 9, 2004, indicates that the transcript was returned. An entry dated March 22, 2006, indicates that Hubbell filed a petition to withdraw the record of proceedings. In an entry dated March 30, 2006, the Indiana Supreme Court issued an order that stated:

> The Court finds it is not presently in need of the Record, accordingly, the Court grants the petition and directs the Clerk of the Supreme Court, Court of Appeals and Tax Court ("Clerk") to release the Record to attorney Daniel M. Grove. Unless and until admitted as an exhibit in post-conviction proceedings, the Record is to remain under the attorney's control at all times. Even if admitted as an exhibit in post-conviction proceedings, the Record shall be maintained intact. The attorney shall return the Record to the Clerk . . . within six months from the date of this order or sixty (60) days from the entry of the final post-conviction judgment, whichever occurs first. If the Record is not returned within six months from the date of this order, the attorney shall petition the Court for additional time to return the Record, explaining why additional time is needed. In the event the Record is admitted as an exhibit in post-conviction proceedings and an appeal is taken from the post-conviction judgment, the Record shall be returned to the Clerk . . . . The Court grants leave for the Clerk to then transfer the Record to the Court of Appeals for use as a separately filed exhibit in that appeal. Once the decision in the post-conviction appeal has been certified as final, the Record shall return to the custodial care of the Clerk for handling consistent with usual practice.

Chronological Case Summary, Case No. 03S00-9912-CR-00714, *Hubbell v. State*, entry dated 03/30/2006 (capitalization removed).

[5] In May 2013, Hubbell sent a *pro se* motion to the Indiana Supreme Court requesting a copy of the Record of Proceedings from his direct appeal. *Id*., entry dated 05/22/2013. In response, the Supreme Court issued the following letter:

> This letter is sent pursuant to the Supreme Court's "Standing Order Governing the Release of Appellate Records for Copying" issued March 8, 2001. See, Cause No. 94S00-0103-MS-152. This letter pertains to the cause and moving party noted above, in accordance with the procedures prescribed in the standing order, please file-mark this letter, make an entry on the chronological case summary, and forward file-marked copies of this letter to the Indiana Public Defender, the Indiana Attorney General, to the moving party, and to any counsel of record. As further provided in the Standing Order, you are authorized to release the Appellate Record of Proceedings or Record on Appeal ("Record") to representatives of the Indiana Public Defender who shall be responsible for returning it to you intact within 18 weeks of the date of this letter. Within that time period, the Public Defender's Office will make arrangements to provide a copy of the record to the moving party. However as the Standing Order further provides, if the Office of the Public Defender has agreed to serve as Appellant's Counsel and Appellant wishes that representation to continue, then the Appellant is not entitled to a copy of the Record, notwithstanding any language in this letter to the contrary.

*Id*., entry dated 06/03/2013 (capitalization removed).

[6] The "Standing Order" to which the Court referred provides:

> This Order shall govern the procedures by which copies of Records of Proceedings or Records on Appeal shall be provided to indigent and individuals who have taken direct appeals of their

criminal convictions to the Indiana Supreme Court, either through the exercise of direct appellate jurisdiction or by the court having granted transfer. Effective immediately and until further order, whenever the Court receives a motion requesting a copy of the Record of Proceedings or Record on Appeal at public expense that is appropriately within the Court's jurisdiction, the Office of Supreme Court Administration may, without further order of this Court, issue a letter directing the Clerk to release the Record to the Public Defender for photocopying and transmission to the appellant. The letter will be transmitted to the Clerk of the Court, who shall file-mark it, make an entry on the appropriate docket noting that a letter has been issued pursuant to this standing order, and then transmit file-marked copies of the letter to the Indiana Public Defender, the Indiana Attorney General, any counsel of record, and the moving party. If the Record of Proceedings or Record on Appeal is released to the Public Defender, the Record is at all times to be under the supervision of the Public Defender and is to be returned intact to the Records Department of the Clerk . . . no later than 18 weeks from the date of the letter. Within that time period, the Public Defender is to provide a copy of the Record to the individual at the address indicated in the letter.

Standing Order issued 03/08/2001, Cause No. 94S00-0103-MS-152 (capitalization removed).

[7] Meanwhile, in May 2013, Hubbell filed a *pro se* motion to dismiss his post-conviction counsel under Cause No. 1915. In July 2013, the court granted the motion to dismiss counsel and withdrew Grove's appearance.

[8] On November 11, 2013, Steven Teverbaugh, who had not yet filed an appearance on behalf of Hubbell, filed for *voir dire* transcripts of Hubbell's case. On February 19, 2014, Teverbaugh received these transcripts. On April 14,

2014, Teverbaugh filed an appearance on behalf of Hubbell, and on September 23, 2014, he filed a motion to withdraw, which the court granted.

[9] On December 15, 2014, Hubbell, *pro se*, filed a Motion for Post-Conviction Court to Take Judicial Notice of Own Records. On December 17, 2014, the court entered an order which stated that the court was unclear what Hubbell sought and would rule on the motion at the post-conviction hearing. On December 30, 2014, Hubbell filed a Motion to Clarify to Take Judicial Notice of Own Records and moved the court to "take judicial notice of all records in relation to the jury trial, to make the trial record AND voir dire record an exhibit in the post-conviction proceedings, and for all other just and proper relief." Appellant's Appendix at 146.

[10] On January 7, 2015, the court entered an order indicating that it would follow the precedent of *Graham v. State*, 941 N.E.2d 1091, 1097 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962, and that the court would not take blanket judicial notice of any and all records of the court as requested by Hubbell nor would the court secure records on his behalf. On April 28, 2015, Hubbell filed an amended petition for post-conviction relief and asserted that he was deprived of the effective assistance of counsel.

[11] On June 26, 2015, the court held an evidentiary hearing. During the testimony of Hubbell's trial counsel who also served as his appellate counsel, Hubbell stated that he would be referring to the trial transcripts and *voir dire* transcripts and that he "would probably . . . is going to need to probably ask for a

continuance until the Court is able to obtain such documents . . . ." Post-Conviction Transcript at 17. He also stated that the copies that he had were not certified and that "it would not be able to be admitted into evidence or exhibits." *Id.* After Hubbell indicated that he was not requesting the court to enter a ruling at that time, Hubbell's trial counsel testified that he gave Hubbell the volumes of his transcripts years ago.

[12]  After some further direct examination of trial counsel, Hubbell stated that he was in a predicament because "we do not have trial transcripts for me to be able to help my witness refer to . . . ." *Id.* at 22. He also stated that he "may have to ask for a continuance until such time the Court can obtain these documents." *Id.* The court informed Hubbell that he had the affirmative duty to deliver the record to the post-conviction court. Hubbell stated that the trial transcript was 6,500 pages, that it was uncertified, and that "for my part and being DOC, there is no way for me to be able to transport that. They just would not allow me to do such." *Id.* at 27. He also stated that "they've been probably marked and written on with pen or highlighter or whatever to . . . for my own personal use just because the Court has their own records . . . ." *Id.* After further discussion, Hubbell withdrew his request to continue.

[13]  Hubbell questioned his direct appeal counsel about why he had not raised a double jeopardy argument on appeal. To refresh counsel's recollection, Hubbell handed counsel a document and asked counsel to state the page number on the bottom. Before counsel could answer, the prosecutor interrupted to ask if the document was certified. Counsel answered that it did

not appear to be a certified document, and the prosecutor objected to referring to it. The court asked Hubbell if he had a response, and Hubbell said:

> My response is part of the trial . . . trial record that I asked and requested to . . . be here, that would have been certified, it is part of the closing arguments of Kathleen Burns, of which she has stated and I am not in possession nor have I ever been in possession of a trial record that was certified. So even if I wanted to bring it here, I couldn't, because I'm not in possession of one.

*Id.* at 73. The prosecutor then responded:

> Your Honor, the State reiterates its . . . its objection. I believe the Court tried to afford Mr. Hubbell every opportunity to obtain a certified transcript and I believe this Court attempted to suggest to him that it might be against his best interests to attempt to proceed without it.

*Id.* The court sustained the prosecutor's objection.

[14] Hubbell then attempted to ask his direct appeal counsel a hypothetical question about double jeopardy:

> This is a hypothetical. You were raising the double jeopardy claim within the appeal and you were aware of a statement in closing arguments that you could cite page, volume number, line to line, and let's just say hypothetically, if that statement was to state with . . . without her consent or did remove Sharon Myers by fraud, enticement, force, threat of force from the place . . . from one place to another, which resulted in serious bodily injury to Sharon Myers, specifically her death, wouldn't that in your judgment qualify as a double jeopardy, if you was [sic] to be able to use a quote of that nature within the appeal?

*Id.* at 75-76.  Again, the prosecutor objected:

> Objection, Your Honor.  Number one, the question calls for
> speculation.  Secondly, even if this is a hypothetical question to
> an expert witness, those facts are not in evidence.  He cannot
> render an opinion based upon a hypothetical when the evidence
> is not in the record.  The evidence is not in the record because
> Mr. Hubbell has failed to produce it.

*Id.* at 76.  The court again sustained the prosecutor's objection.

[15]  On October 15, 2015, the court denied Hubbell's petition for post-conviction
relief.  In its order, the court stated it had not taken judicial notice of the
transcripts of the hearings and trial because it did not have those documents.

### Discussion

[16]  Before discussing Hubbell's allegations of error, we note the general standard
under which we review a post-conviction court's denial of a petition for post-
conviction relief.  The petitioner in a post-conviction proceeding bears the
burden of establishing grounds for relief by a preponderance of the evidence.
*Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5).
When appealing from the denial of post-conviction relief, the petitioner stands
in the position of one appealing from a negative judgment.  *Fisher*, 810 N.E.2d
at 679.  On review, we will not reverse the judgment unless the evidence as a
whole unerringly and unmistakably leads to a conclusion opposite that reached
by the post-conviction court.  *Id.*  "A post-conviction court's findings and
judgment will be reversed only upon a showing of clear error – that which

leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[17] Hubbell argues that the court abused its discretion and denied him a fair hearing when it declined to take judicial notice of the record and *voir dire* transcripts. Hubbell argues that Ind. Evidence Rule 201(c)(2) required the court to take judicial notice of the particular documents. Hubbell contends that the court "abused its discretion against Indian[a] Evidence Rule 201(c)(2) when it denied [him] the ability to refer to, use, and admit into evidence, uncertified photo copied documents of the Record of Proceedings/Trial Transcripts and Voir Dire transcripts and make them part of the record of the PCR proceedings." Appellant's Brief at 15.

[18] The State argues that the post-conviction court was not required to take judicial notice of the record. The State also asserts that any material relied upon by a trial court in deciding a case should be made part of the record for purposes of appeal, that Hubbell was not misled about his obligation to produce the record, and that it remained Hubbell's burden to secure the trial record to admit it as an exhibit.

[19] Ind. Evidence Rule 201(a) governs the kinds of facts that may be judicially noticed and provides that "[t]he court may judicially notice . . . the existence of . . . records of a court of this state." Ind. Rule 201(b) governs the kinds of laws

that may be judicially noticed and provides that "[a] court may judicially notice a law, which includes . . . records of a court of this state . . . ." Ind. Evidence Rule 201(c) provides that "[t]he court . . . (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

[20] In *Graham v. State*, 941 N.E.2d 1091, 1097 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962, we held that there was longstanding precedent that the record of proceedings from the original trial must be admitted into evidence at a post-conviction hearing, just like any other exhibit, and a post-conviction court may not take judicial notice of that record. We then noted:

> It remains to be seen whether this will still be the rule following an amendment to Indiana Evidence Rule 201, effective January 1, 2010, which permits a court to take judicial notice of "records of a court of this state." Ind. Evidence Rule 201(b)(5); *see also In the Matter of the Paternity of P.R.*, 940 N.E.2d 346 (Ind. Ct. App. 2010). We need not decide whether this amendment would apply here, given that Graham's PCR hearing was held before its effective date. We would emphasize that, regardless of the rules regarding judicial notice, any material relied upon by a trial court in deciding a case should be made part of the record for appeal purposes.

941 N.E.2d at 1097 n.2.

[21] On rehearing, the State argued that the statements effectively placed the burden on the post-conviction court to track down and retrieve evidence mentioned by a litigant, but not actually supplied to the court, and then to enter it into the

record. 947 N.E.2d at 964. We emphatically disagreed and stated that its holding did not require a post-conviction court "to go searching for records in support of either party's position or to become an advocate or investigator for either party." *Id.* We also emphasized that "if a PCR court purports to take judicial notice of other court records and relies upon those records in ruling upon a PCR petition, but those records are not made part of the PCR record, it places a substantial burden upon this court on appeal to either track down those records and have them transmitted to this court, or to attempt to decide the case without benefit of those records." *Id.* at 965.

[22] Recently, the Indiana Supreme Court discussed Rule 201. In *Horton v. State*, 51 N.E.3d 1154, 1160 (Ind. 2016), the Court held that the failure to confirm Horton's personal waiver before proceeding to a bench trial was fundamental error and was dispositive of the appeal, but exercised its discretion to address another issue "for guidance purposes only – whether an unsigned sentencing order and a judicially noticed case file not included in the record are sufficient to support the D-felony domestic battery conviction." The Court titled the second issue as: "It May Be Enough Under Indiana Evidence Rule 201(b)(5) to Unambiguously Identify the Publicly Available Court Records Being Noticed, but the Best Practice Is to Enter the Particular Documents into the Record." 51 N.E.3d at 1160.

[23] The Court stated:

> Effective January 1, 2010, amended Rule 201(b)(5) now permits
> courts to take judicial notice of "records of a court of this state,"

precisely as the trial court did here. But that Rule is silent on whether a court must enter that document into the record.

On one hand, it is vital for the parties to know the exact evidentiary basis on which the judgment turned—and for appellate courts to know likewise to facilitate review. On the other hand, the ultimate purpose of judicial notice is *efficient* consideration of uncontroversial facts, *see Baran v. State*, 639 N.E.2d 642, 647 (Ind. 1994)—efficiency that would be undermined to the point of uselessness for judicial records if simply "tak[ing] judicial notice of the court's own records . . . [in] the 0201-CM-195 case" obligated the court to physically incorporate that *entire file* into the record in the present case. Judicial notice "encompasses facts ascertainable from sources that cannot reasonably be questioned, and presumably court records are such sources," in the absence of evidence tending to rebut that presumption. *Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind. Ct. App. 2004) (addressing judicial notice of the court's file in the same proceeding, before enactment of Evidence Rule 201(b)(5), for similar notice of other court records), *trans. denied*.

But as the Court of Appeals has emphasized, failing to incorporate noticed court records into the record on appeal hinders appellate review. In *Graham v. State*, 947 N.E.2d 962 (Ind. Ct. App. 2011), a post-conviction court took judicial notice of the record in the underlying criminal trial but did not make it part of the post-conviction record on appeal. The Court of Appeals noted,

> [I]f a PCR court purports to take judicial notice of other court records and relies upon those records in ruling upon a PCR petition, but those records are not made part of the PCR record, it places a substantial burden upon this court on appeal to either track down those records and have them transmitted to this

court, or to attempt to decide the case without benefit of those records.

*Graham*, 947 N.E.2d at 965.  For those same reasons, the absence of the noticed records has impeded our review.

In spite of that impediment, though, we find no error here.  Even when copies of court records to be noticed are not available, "sufficient or accurate information that would allow the Court to readily locate the documents in its records" may be adequate. *Love v. The Mail on Sunday*, 489 F.Supp.2d 1100, 1105 n.3 (C.D. Cal. 2007) (denying request for judicial notice of court records under Federal Rule of Evidence 201 because proponent "did not submit copies of these documents" or provide sufficient information for the court to readily locate them). . . .

*Id.* at 1160-1161.  The Court observed:

Indiana Appellate Rule 27 provides that the Record on Appeal includes "all proceedings before the trial court . . ., whether or not . . . transmitted to the Court on Appeal."  Accordingly, even though the usual practice under Appellate Rule 12(A) is for trial court clerks to "retain the Clerk's Record throughout the appeal," the judicially noticed case file in CM-195 is part of the record in this case.  We therefore procured copies of several documents from the CM195 file from the trial-court clerk—much as the parties could have done under Appellate Rule 32 to resolve disagreements as to the accuracy (including the completeness) of the Clerk's Record. . . .

We emphasize that we were under no duty to request these additional materials—as *Graham* noted, we also would have been well within our discretion "to attempt to decide the case without benefit of those records."  947 N.E.2d at 965.  Indeed, we would not have made the request if we had not already determined that

the evidence was sufficient as discussed above—since "it is not our responsibility to develop arguments for either party." *In re Riddle*, 946 N.E.2d 61, 70 (Ind. Ct. App. 2011). Rather, we made that request only to illustrate the availability of procedures best employed *by the affected parties* when a court takes judicial notice without following *Graham*'s best-practices guidance—and before a unified statewide [electronic case management system] largely moots these concerns.

*Id.* at 1162. The Court ultimately concluded that "[s]ince the prior case file was readily and publicly available, and its cause number was repeatedly and unambiguously identified in the record to enable investigation and objection if warranted, the failure to formally enter the relevant documents from CM-195 into this record was not an abuse of discretion." *Id.* at 1163. The Court also echoed *Graham's* "explanation of why it is by far the preferable practice to enter into the record the particular documents of which the court is taking notice." *Id.*

[24] For all these reasons, we decline to hold the court abused its discretion when it refused to take judicial notice of documents that were not before the court. That, however, is not the end of our analysis because Hubbell also asserts the court's refusal to obtain the certified copy of his direct appeal record denied him a fair hearing.

[25] Although the process due to a petitioner in a post-conviction proceeding does not rise to the level of process due to a citizen prior to being convicted, fairness and justice require that the opportunity to obtain post-conviction relief be more than illusory. Hubbell's inability to produce a certified copy of his Record of

Proceedings from his direct appeal occurred through no fault of his own, and it precluded him from presenting the evidence he needed to assert his claims.

[26] The post-conviction court's order acknowledges Hubbell asked the court to "order the clerk of this court to obtain the trial records on Hubbell's behalf from the Indiana Supreme Court for use at the PCR hearing." Order Denying Amended Verified Petition for Post-Conviction Relief at 7-8. Evidence Rule 201 and the case law do not *require* the post-conviction court to obtain the Record requested by Hubbell. However, neither do they prohibit a post-conviction court from obtaining them.

[27] We believe issuing an order requesting the Appellate Courts Clerk to transmit the certified Record of Proceedings from a defendant's direct appeal does not require Hubbell's post-conviction court to "go searching for records" or to become his "advocate or investigator" as was discouraged by *Graham*. *Graham*, 947 N.E.2d at 964. It is a simple request for the post-conviction court to subpoena a designated document. *See* Ind. Trial Rule 45(B) ("A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein . . . .").

[28] The post-conviction rules do not establish a procedure for a *pro se* petitioner to subpoena a document, but they do explain the procedure if a *pro se* petitioner wishes to subpoena a witness. *See* Post-Conviction Rule 1(9)(b). The post-conviction court must subpoena witnesses for a *pro se* petitioner "[i]f the court finds the witness' testimony would be relevant and probative." *Id.* We have

found reversible error in the failure to subpoena a witness when a petitioner's claims could not be presented without the presence of that specific witness. *See Medlock v. State*, 547 N.E.2d 884, 887-888 (Ind. Ct. App. 1989) (clerk's failure to subpoena witnesses for post-conviction proceeding following petitioner's *pro se* request for subpoenas was not harmless error where petitioner could not prove claim without witness's testimony about alleged promises witness made to induce petitioner's guilty plea).

[29] We see no reason we ought not reach the same result when a petitioner raises issues—such as ineffective assistance of counsel and double jeopardy[1]—that cannot be addressed on their merits without access to the Record of Proceedings. Declining to obtain the direct appeal transcript in such circumstances is reversible error. *See id*.

[30] Rather than obtaining the Record of Proceedings for Hubbell, the post-conviction court imposed on Hubbell "the affirmative duty to get the [R]ecord [of Proceedings] to the PCR Court." Post-Conviction Transcript at 25. It is not apparent how Hubbell could have accomplished that task when he is not a

---

[1] Simultaneous convictions of murder and criminal confinement can violate the prohibition against double jeopardy. *See Lowrimore v. State*, 728 N.E.2d 860, 868 (Ind. 2000) (vacating conviction for confinement where jury was presented "the same evidentiary facts—the suffocation and choking of Lawyer—to prove both the murder charge and the criminal confinement charge"), *reh'g denied*; *Newgent v. State*, 897 N.E.2d 520, 529 (Ind. Ct. App. 2008) (vacating confinement conviction to eliminate double jeopardy with murder conviction). Because Hubbell had no way to obtain the certified copy of his Record of Proceedings for his post-conviction hearing, he could not present evidence that would permit us to review whether his appellate counsel's failure to raise double jeopardy on appeal constituted ineffective assistance.

licensed lawyer, he is proceeding *pro se*, and he is indigent. Nor does there appear to be a published procedure that allows him to do so.

[31] None of the Indiana Supreme Court orders entered under the direct appeal or the Standing Order referenced above explicitly prohibit releasing the Record of Proceedings from a direct appeal to persons who are not licensed attorneys or employees of the Public Defender's office, but that is a fair inference, as neither the Public Defender nor a petitioner's lawyer is permitted to allow the Record of Proceedings out of his "supervision" or "control."

[32] Hubbell is not represented by the State's Public Defender, who presumably would be responsible for bringing the Record of Proceedings to a post-conviction hearing. Hubbell is not a licensed lawyer, so he cannot check out the Record of Proceedings himself. Neither can he send a friend or relative, unless such person happens to be a licensed attorney.

[33] Hubbell is proceeding as an indigent. Therefore, he presumably cannot afford to hire licensed counsel for the sole purpose of transmitting the Record of Proceedings from the Supreme Court to the post-conviction court. Nor should we presume he has the funds to purchase from the trial court reporter a new certified copy of the proceedings, which the post-conviction court acknowledges included a 28-volume transcript. *See* Order Denying Amended Verified Petition for Post-Conviction Relief at 1.

[34] Hubbell acknowledges he once received the copy of his Record of Proceedings to which he was entitled. *See* Post-Conviction Rule 1(9)(b) ("Petitioners who

are indigent and proceeding *in forma pauperis* shall be entitled to production of guilty plea and sentencing transcripts at public expense, prior to a hearing, if the petition is not dismissed."). But he asserted in his December 30, 2014 motion that his copy is not certified and "may not be to the standard required by the court through damage occurring through shake downs . . . ." Appellant's Appendix at 146.

[35] Under these facts, it is difficult to see what more could be expected of Hubbell as he was attempting to present his post-conviction arguments. Until such time as electronic transcripts and records make this issue moot for all petitioners, *pro se* petitioners need to know how they may ensure the Records of Proceedings from their direct appeals are available for a post-conviction hearing.

## *Conclusion*

[36] For the foregoing reasons, we reverse the post-conviction court's denial of Hubbell's petition for post-conviction relief, order the court to obtain the direct appeal Record, and permit Hubbell to question his witnesses and present his arguments with the benefit of a certified Record of Proceedings.

[37] Reversed and remanded.

Baker, J., and May, J., concur.