## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 04 2020, 5:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jason Dean Hubbell
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Dean Hubbell, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | May 4, 2020 <br><br> Court of Appeals Case No. 19A-PC-2058 <br><br> Appeal from the Bartholomew Circuit Court <br><br> The Honorable Kelly S. Benjamin, Judge <br><br> Trial Court Cause No. 03C01-1504-PC-1915 |

**Shepard, Senior Judge.**

[1] Jason Hubbell appeals the denial of his petition for post-conviction relief. We affirm.

# Facts and Procedural History

[2]     The underlying facts, as stated in Hubbell's direct appeal, are as follows:

> Sharon Myers left for work at the Arvin plant early on the morning of May 13, 1997. She never arrived. Another employee of Arvin, Sherry Young, saw a man and a woman leaving the Arvin plant as she arrived at work that same morning. The woman looked similar to Myers. The man had one hand on the woman's neck or back, and the two entered a white van and drove away.
>
> The police came to the plant later that morning to look for Myers. Young had "mentally" made note of the license plate number and gave the police the number and a description of the van. The police traced the license plate number to a white van owned by Hubbell. Hubbell worked at the Arvin plant with Myers and had called in sick on May 13. Young then identified a picture of the van as the one she had seen that morning, and later that day identified Hubbell when police presented him to her.
>
> In November 1997, skeletal remains were found in a marsh area in Johnson County and identified as Myers' through dental records. An autopsy showed a fracture in the hyoid bone which, together with the size of a ligature found around Myers' neck, indicated that the cause of death was manual strangulation. Acrylic fibers found near the body were consistent with fibers found in Hubbell's van. Grass fragments found in the search of the van were consistent with grass samples from the marsh. . . .
>
> On August 31, 1998, Hubbell was indicted by a grand jury on the charges of murder and criminal confinement. On September 28, Hubbell filed a notice of alibi, which he amended on October 15. The State did not respond. At trial, the State introduced parts of

> Hubbell's statements made following a polygraph examination. The State also introduced testimony from a jail inmate that Hubbell admitted the killing to him.

*Hubbell v. State*, 754 N.E.2d 884, 887-88 (Ind. 2001) (internal footnote omitted).

[3] Additional facts presented at trial supported the jury's verdict. As the Arvin human resources clerk, Myers handled insurance and disability matters. In that position she had several interactions with Hubbell, who was having difficulty obtaining disability payments and adding his newborn son to his insurance. Further, an investigating officer testified at trial that Hubbell told him "it might be possible" that he was responsible for Myers' disappearance and that "he can't say that he did do it, but he has prayed to God every night since then that it isn't so." Trial Tr. Vol. 17, p. 129.

[4] At the end of a four-week jury trial in late 1999, Hubbell was convicted of both charges. The court sentenced him to consecutive terms of sixty-five years for murder and ten years for confinement. *Hubbell*, 754 N.E.2d at 888.

[5] On direct appeal, Hubbell raised ten issues, and our Supreme Court affirmed the judgment. *See id.* at 887.

[6] In 2002, Hubbell filed a pro se petition for post-conviction relief, which was denied in 2015. Still acting as his own counsel, Hubbell appealed. This Court reversed and remanded with instructions for the post-conviction court to obtain the direct appeal record and permit Hubbell to question his witnesses and

present his arguments with the benefit of the record. *See Hubbell v. State*, 58 N.E.3d 268 (Ind. Ct. App. 2016).

In December 2016, Hubbell filed an amended post-conviction petition, which the court heard in February 2019. The court took the matter under advisement and denied Hubbell's petition in August. He now appeals.

# Issues

Hubbell presents two issues, which we restate as:

I.    Whether the post-conviction court erred by denying Hubbell's claim of ineffective assistance of appellate counsel.

II.   Whether the post-conviction court erred by denying Hubbell's request for discovery of evidence in an unrelated case.

# Discussion and Decision

As the post-conviction court has denied relief, the petitioner appeals from a negative judgment and faces the rigorous burden of showing that the evidence, as a whole, leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Harris v. State*, 762 N.E.2d 163 (Ind. Ct. App. 2002), *trans. denied*. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error — that which leaves us with a definite and firm conviction that a mistake has been made. *Kistler v. State*, 936 N.E.2d 1258 (Ind. Ct. App. 2010), *trans. denied*. In this review, findings of fact

are accepted unless they are clearly erroneous, and no deference is accorded to conclusions of law.  *Id.*

# I. Ineffective Assistance

[10] To prevail on a claim of ineffective assistance of counsel, a defendant is required to establish both (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defendant.  *Johnson v. State*, 948 N.E.2d 331 (Ind. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  To satisfy the first element, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's errors were so serious that the defendant was denied the counsel guaranteed by the Sixth Amendment.  *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013).  In order to satisfy the second element, the defendant must show prejudice; that is, a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Id.* There is a strong presumption that counsel rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment, and the defendant has the burden of overcoming this presumption. *Harris*, 762 N.E.2d 163.

[11] Hubbell asserts that his appellate counsel was ineffective for failing to raise a double jeopardy issue on appeal.  Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, counsel's failure to raise a specific issue on direct

appeal rarely constitutes ineffective assistance. *Brown v. State*, 880 N.E.2d 1226 (Ind. Ct. App. 2008), *trans. denied*. "For countless years, experienced advocates have 'emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.'" *Walker v. State*, 988 N.E.2d 1181, 1191 (Ind. Ct. App. 2013) (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)), *trans. denied*. Accordingly, on review, we should be particularly deferential to appellate counsel's strategic decision to exclude certain issues in favor of other issues more likely to result in a reversal. *Id.* To prevail on such a claim, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Ben-Yisrayl v. State*, 738 N.E.2d 253 (Ind. 2000).

[12] Hubbell's trial counsel was also his appellate counsel. Prior to Hubbell's sentencing, counsel filed with the trial court a motion to vacate or reduce the confinement conviction on double jeopardy grounds. The State filed a response identifying the evidence that supported separate injuries so as to avoid any violation of Hubbell's double jeopardy rights. The State pointed to trial evidence of loss of consciousness and a cigarette burn that the jury could have found fulfilled the serious bodily injury element of Hubbell's confinement charge. The court denied Hubbell's motion.

[13] As we noted above, on direct appeal, Hubbell's counsel raised ten issues. Our Supreme Court affirmed.

[14] Hubbell's trial/appellate counsel testified at both his post-conviction hearings, stating that the State's response to the motion to vacate "laid out a compelling case that the[re] were separate facts used to convict [Hubbell] of both the criminal confinement and the murder." 2015 PCR Tr. Vol. 1, p. 68. Additionally, counsel testified he believed there were "other compelling or stronger arguments to have the conviction reversed." *Id.* And later he reiterated, "[W]e did consider raising that on appeal, but it was decided, as I testified last time that we felt that the State's argument was strong, that we wouldn't be successful on that argument, and we had more arguments that we felt were going to be more successful in the appeal than that would have been and we made a conscious decision not to include it." 2019 PCR Tr. Vol. 2, p. 12. Counsel also indicated that a successful double jeopardy argument would have resulted only in a reduction of sentence whereas success on the issues raised on appeal had the potential to lead to a reversal. *Id.* at 57.

[15] The post-conviction court observed that Hubbell's trial/appellate counsel argued double jeopardy to the trial court based on the *Richardson* test, that the State responded with compelling arguments, and that the trial judge, who had just presided over the trial, denied Hubbell's motion. The post-conviction court further found that counsel made a strategic decision not to include the double jeopardy claim on appeal due to the State's strong argument in the trial court and the trial court's decision, as well as the existence of stronger issues. Finally, the court noted that counsel attempted to show the cumulative effect of multiple

trial errors in an attempt to obtain a reversal of Hubbell's convictions and, to do so, used 13,997 of the allotted 14,000 words in his appellate brief.

[16] Hubbell's appellate counsel testified that his decision not to raise a double jeopardy claim on appeal was a strategic decision based on his assessment of other possible claims and their corresponding potential benefit. Moreover, his assessment was informed by the practice run in the trial court, and counsel was thus able to make his decision in light of the State's argument and the court's decision on the motion to vacate. Hubbell has not met his burden of showing that his appellate counsel failed to present a significant and obvious issue and that the failure cannot be explained by any reasonable strategy.

## II. Request for Discovery

[17] Hubbell next contends the post-conviction court erred by denying his motion for discovery of the record of the unrelated criminal case of Michael Dean Overstreet.

[18] Post-conviction proceedings are governed by the same rules applicable in civil proceedings, including discovery procedures. Ind. Post-Conviction Rule 1(5). Trial and post-conviction courts are afforded broad discretion in ruling on discovery matters, and we will affirm their determinations absent a showing of clear error and resulting prejudice. *Wilkes v. State*, 984 N.E.2d 1236 (Ind. 2013).

[19] Hubbell claims the post-conviction court's ruling deprived him of his ability to "fully question, present evidence, and argue [his] position that Michael Dean Overstreet was the perpetrator of the crimes committed in [his] case."

Appellant's Br. pp. 21-22. However, Hubbell posed questions and argued his position during his evidentiary hearings. At his first hearing, Hubbell questioned his trial counsel about counsel's investigation into Overstreet as a suspect in the disappearance of Myers. Counsel testified that he deposed the detective/lead investigator in Hubbell's case who stated he had looked into Overstreet but "could never come up with any connection." 2015 PCR Tr. Vol. 1, p. 16. Referring to Overstreet, counsel further testified that he "thoroughly investigated that lead at the trial stages and ruled him out positively." *Id.* at 89. Counsel recalled checking Overstreet's BMV registration and records to determine if he had a van of the type that was described by Sherry Young, talking with Overstreet's attorneys, and reviewing all the media coverage of the Overstreet case. He stated, "The facts weren't matching up. We made a conclusion that he wasn't an alternate suspect. If he would have been, we absolutely would have included him in there. In fact, we had two other alternate suspects that we included[,]" one of whom admitted to the murder. *Id.* at 90; 2019 PCR Tr. Vol. 2, p. 17.

[20] At Hubbell's second hearing, counsel again stated that he had thoroughly investigated Overstreet but that he "wasn't a viable alternative suspect." 2019 PCR Tr. Vol. 2, p. 17. Hubbell extensively questioned his counsel as to his investigation of Overstreet. *See id.* at 29-48.

[21] There was no basis for the court to allow Hubbell to engage in a fishing expedition fueled merely by his speculation or hope that there is relief to be found. *See Roche v. State*, 690 N.E.2d 1115, 1132 (Ind. 1997) (post-conviction is

not device for investigating possible claims, but rather means for vindicating actual claims). Hubbell has failed to demonstrate that the post-conviction court's refusal to allow him to obtain the records in Overstreet's unrelated criminal case was clearly erroneous.

# Conclusion

Based on the foregoing, we conclude Hubbell has not met his burden of showing the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

Affirmed.

Bradford, C.J., and Bailey, J., concur.