Ricky E. GRAHAM, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 22A01–1008–PC–392.

Court of Appeals of Indiana.

Feb. 7, 2011.

Rickey E. Graham, Branchville, IN, Appellant Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Ricky [1] Graham appeals the denial of his petition for post-conviction relief ("PCR petition"), which challenged his conviction for Class B felony dealing in a narcotic drug. We affirm in part and remand in part.

### Issues

The issues before us are:

I. whether there was a sufficient factual basis for Graham's guilty plea;

---

1. Our docket lists Graham's first name as "Rickey." Graham, who is representing himself, spells his name "Ricky."

II. whether Graham received effective assistance of appellate counsel; and

III. whether the PCR court's conclusion that Graham's guilty plea was not illusory or involuntary is supported by its findings.

### Facts

We related the underlying facts in this case in Graham's direct appeal as follows:

On July 13, 2006, officers with the New Albany Police Department, acting on a "narcotics tip," arrived at 711 West Market Street in New Albany and spoke with Mark Leone, who was an occupant of the residence. The officers had observed a truck owned by Michael Landrum parked behind the house, and they asked Leone whether Landrum was inside. Leone stated that there were three others inside, but he did not identify the other occupants. The officers asked Leone to bring the other occupants to the front door to talk, but Leone only brought Landrum back with him. Landrum stated that he did not know who else was in the house.

When the officers asked Leone whether Graham was inside the house, he said "no," but became "extremely nervous." Leone then went inside the house and came back to the front door with Jessica Hill, who was a known girlfriend of Graham's. The officers knew that there was an outstanding warrant for Graham's arrest. The officers then received consent to enter the house, and they found Graham lying in a bathtub at the back of the house. They arrested Graham on the warrant. And after they obtained written consent from Leone to search the house, officers found "a glass jar of what [was] believed to be part of a methamphetamine lab." Officers then obtained a search warrant to conduct a more thorough search of the house, and they found more evidence that metham-

phetamine was being manufactured in the house.

The State charged Graham with dealing in a narcotic drug, as a Class B felony, and being an habitual offender. After the first day of trial, Graham pleaded guilty to the dealing charge, and, in exchange for that plea, the State dismissed the habitual offender charge. The plea agreement left sentencing open to the trial court's discretion. At sentencing, the trial court identified the following aggravators: Graham's criminal history; the risk that he will commit another crime; the nature and circumstances of the crime, namely, that Graham participated in manufacturing methamphetamine in a crowded neighborhood; a warrant in 2005 for a probation violation; and that Graham is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility. In addition, the trial court found aggravating that this was not the first time Graham had been arrested "for methamphetamine labs," and that Graham had not taken advantage of previous opportunities for drug treatment. The trial court did not identify any mitigators and sentenced Graham to twenty years.

*Graham v. State*, No. 22A04–0612–CR–757, slip op. at 2–3, 2007 WL 2811089 (Ind.Ct.App. Sept. 28, 2007) (citations omitted).

Graham's trial attorney made an oral motion to withdraw the guilty plea at Graham's sentencing hearing, which the trial court denied. On direct appeal, Graham's appellate attorney challenged only the appropriateness of his sentence under Indiana Appellate Rule 7(B). We affirmed. *Id.* at 6.

On November 15, 2007, Graham, acting pro se, filed a PCR petition. The petition alleged, among other matters, that Gra-

ham received ineffective assistance of both trial and appellate counsel, and that his guilty plea was illusory and compelled by the improper threat of an habitual offender enhancement. On May 14, 2009, Graham filed with the PCR court a request that his trial attorney be subpoenaed to appear at the PCR hearing. The PCR court never responded to this request. The PCR hearing was held on September 3, 2009; Graham's trial attorney was not in attendance. On July 14, 2010, the PCR court issued its findings and conclusions denying relief to Graham. Graham now appeals, continuing to represent himself.

### Analysis

 Post-conviction proceedings provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind.2007), *cert. denied.* "In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence." *Id.* We review factual findings of a post-conviction court under a "clearly erroneous" standard but do not defer to any legal conclusions. *Id.* We will not reweigh the evidence or judge the credibility of the witnesses and will examine only the probative evidence and reasonable inferences therefrom that support the decision of the post-conviction court. *Id.* Additionally, the PCR court here entered findings of fact and conclusions thereon, as required by Indiana Post–Conviction Rule 1(6). We cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support the judgment. *Lile v. State*, 671 N.E.2d 1190, 1192 (Ind.Ct.App.1996).

Before turning to the merits, we address some procedural issues. First, as noted, Graham alleges in part that he received ineffective assistance of trial counsel. He specifically alleges that trial counsel failed to adequately prepare for trial, provided incorrect advice as to the validity of the habitual offender allegation filed by the State, and acted improperly in allegedly advising Graham in the middle of his trial that "the jury has you already convicted." Appellant's Br. p. 7. Repeatedly throughout the PCR court's findings and the State's brief on appeal, it is stated that Graham failed to support his ineffective assistance of trial counsel claim because he did not attempt to procure his trial attorney's attendance at the PCR hearing. *See Dickson v. State*, 533 N.E.2d 586, 589 (Ind. 1989) (holding that, where a PCR petitioner fails to procure the testimony of trial counsel at PCR hearing, PCR court may infer that trial counsel would not have corroborated claims of ineffective assistance).

██ Those statements by the PCR court and State are not supported by the record. The record before us indicates that Graham did expressly request the PCR court to issue a subpoena to secure his trial attorney's presence at the PCR hearing. As a pro se PCR petitioner, Graham was required to request the PCR court to issue any subpoenas on his behalf. *See* Ind. Post–Conviction R. 1(9)(b). If a PCR court does not believe a proposed witness's expected testimony would be relevant and probative, it must make a finding on the record to that effect before refusing to issue a subpoena. *Id.* Otherwise, the PCR court "shall order that the subpoena be issued." *Id.* It is unclear why the PCR court did not act upon Graham's request to subpoena his trial attorney. It appears that the failure of Graham's trial attorney to testify at the PCR hearing was not Graham's fault. Because, ultimately, we will be remanding for further proceedings in this action, we will not at this time address Graham's claim of ineffective assistance of trial counsel. Instead, that claim may be considered anew

if Graham again files a request with the PCR court to subpoena his trial attorney. If Graham files such a request, the PCR court either must grant it, or make a finding on the record explaining why the subpoena should not be issued.

■ We also observe that the State faults Graham for not introducing evidence at the PCR hearing in support of his claims, including the record related to his trial and guilty plea. It is true that there is longstanding precedent holding that the record of proceedings from the original trial must be admitted into evidence at a PCR hearing, just like any other exhibit, and a PCR court may not take judicial notice of that record.[2] *Douglas v. State,* 800 N.E.2d 599, 605 n. 4 (Ind.Ct.App.2003), *trans. denied.* Here, at the beginning of the PCR hearing, Graham informed the court, "Well, I brought the complete record for the Court, you know, for the state. You know, just so they'd have it." Tr. p. 5. Graham also apparently brought other paperwork in the form of an appendix he had compiled. There followed some discussion with the trial court regarding what parts of the trial record Graham was going to rely upon. With respect to portions of the transcript that Graham was going to rely upon, the PCR court stated, "I believe we can probably get that . . . from the Superior Court records." *Id.* at 7.

■ Unfortunately, precisely what Graham brought to the PCR hearing is unclear, and it was not introduced into evidence and it has not been transmitted to this court in this appeal, nor were any superior court records made part of the record in the PCR proceeding. The PCR court seemed to indicate that, essentially, it could take judicial notice of the trial court record, but as we have indicated that was an improper course of action. It is true that Graham did not insist that the materials he brought to the hearing be introduced into evidence. Still, if a party in a PCR proceeding provides the original trial record (or a part thereof) to the PCR court, the PCR court should proactively ensure that the record is officially entered into evidence as an exhibit, so that the trial record is transmitted to this court in the event of an appeal and to avoid claims of waiver for failing to submit the trial record to the PCR court. Otherwise, there is the danger of converting a procedural technicality into a trap for unsuspecting litigants, which we emphatically discourage. In the present case, we believe we have sufficient information in the record, and in the PCR court's findings, to resolve the issues regarding the factual basis for the guilty plea, Graham's motion to withdraw that plea, and whether that plea was illusory or involuntary.

■ We will not address Graham's claims of fundamental error with respect to the timing of the addition of the habitual offender charging information or in the denial of his motion to withdraw his guilty plea. Freestanding claims of fundamental error are not available on post-conviction review. *See Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Because Graham separately raises the withdrawal issue as a claim of ineffective assistance of appellate

---

**2.** It remains to be seen whether this will still be the rule following an amendment to Indiana Evidence Rule 201, effective January 1, 2010, which permits a court to take judicial notice of "records of a court of this state." Ind. Evidence Rule 201(b)(5); *see also In the Matter of the Paternity of P.R.,* 940 N.E.2d 346 (Ind.Ct.App.2010). We need not decide whether this amendment would apply here, given that Graham's PCR hearing was held before its effective date. We would emphasize that, regardless of the rules regarding judicial notice, any material relied upon by a trial court in deciding a case should be made part of the record for appeal purposes.

counsel, we will address that claim in that context.

## I. Factual Basis

■ We first address whether there was a sufficient factual basis for Graham's guilty plea to Class B felony dealing in a narcotic drug. A court may not accept a guilty plea unless the court determines that a sufficient factual basis exists to support the plea. *Rhoades v. State*, 675 N.E.2d 698, 700 (Ind.1996) (citing Ind.Code § 35-35-1-3). A factual basis may be established by relatively minimal evidence about the elements of the crime from which the court could reasonably conclude that the defendant is guilty. *Id.* A trial court's finding of an adequate factual basis is presumptively correct. *Id.* Additionally, the standard for a sufficient factual basis to support a guilty plea is less rigorous than that required to support a conviction. *Id.* at 702. "Reasonably concluding" that a defendant is guilty for purposes of a factual basis is not the same as concluding guilt beyond a reasonable doubt. *Id.*

■ On this issue, it would have been preferable if we had the trial and guilty plea record before us. However, the PCR court made a finding as to what Graham stated at the guilty plea hearing in support of a factual basis, and he does not dispute that finding. Specifically, Graham admitted that he was present at the 711 West Market Street house in New Albany on July 13, 2006, that he knew Leone was manufacturing methamphetamine there, and that he loaned Leone his truck so that he could go purchase more pills needed in the manufacturing process.

■ Though this factual basis was not overwhelming evidence of Graham's guilt,

it did not need to be in order to support his guilty plea. There being no evidence that Graham possessed methamphetamine, the factual basis was required to establish that he knowingly or intentionally manufactured, financed the manufacture of, delivered, or financed the delivery of a narcotic drug, i.e. methamphetamine.[3] *See* I.C. § 35-48-4-1. Furthermore, under accessory liability theory, "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...." I.C. § 35-41-2-4. Factors to consider in determining liability as an accomplice include "(1) presence at the scene of the crime; (2) companionship with another engaged in a crime; (3) failure to oppose the commission of the crime; and (4) the course of conduct before, during, and after the occurrence of the crime." *Stokes v. State*, 919 N.E.2d 1240, 1245 (Ind.Ct.App.2010), *trans. denied.*

Keeping in mind that we need not determine whether Graham's factual basis would have supported a conviction beyond a reasonable doubt, there is sufficient evidence from which the trial court reasonably could have concluded that he committed dealing in a narcotic drug as an accomplice to Leone's manufacturing of methamphetamine. Graham knowingly was present at a house where methamphetamine was being manufactured by Leone, a companion of his. He did nothing to oppose the manufacturing, but rather assisted in the process by permitting Leone to use his truck to go purchase a necessary ingredient. This was a sufficient factual basis to permit the trial court to accept Graham's plea of guilty to Class B felony dealing in a narcotic drug.

---

3. Twelve days before Graham was arrested, a new statute went into effect specifically criminalizing dealing in methamphetamine. *See*

I.C. § 35-48-4-1.1. The State chose to charge Graham under the preexisting statute regarding cocaine and narcotic drugs.

## II. Ineffective Assistance of Appellate Counsel

■ Next, we consider whether Graham received ineffective assistance of appellate counsel. Specifically, Graham contends appellate counsel was ineffective for not raising to this court on direct appeal whether the trial court erred in denying permission to withdraw his guilty plea at the sentencing hearing.[4] When reviewing claims of ineffective assistance of appellate counsel, we apply the same standard applicable to claims of trial counsel ineffectiveness. *Fisher v. State,* 810 N.E.2d 674, 676 (Ind.2004). The defendant must show that appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. *Id.* at 677. Ineffective assistance of appellate counsel claims generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* Graham's argument invokes the second category.

■ We are highly deferential to appellate counsel's decisions in deciding what issues to raise on direct appeal. *See id.* In evaluating those decisions, we must determine (1) whether an unraised issue was significant and obvious from the face of the record; and (2) whether an unraised issue was "clearly stronger" than the raised issue or issues. *Id.* Counsel is deficient only if he or she failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision. *Id.*

■ In evaluating Graham's ineffective assistance claim, we will assess what the strength of his appellate argument regarding withdrawal of his guilty plea would have been on direct appeal. Indiana Code Section 35–35–1–4(b) permits a defendant, after pleading guilty but before imposition of sentence, to move to withdraw his or her guilty plea. Such a motion "shall be in writing and verified." I.C. § 35–35–1–4(b). A trial court must grant a motion to withdraw a guilty plea if the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice. *Bland v. State,* 708 N.E.2d 880, 882 (Ind.Ct.App.1999). If the defendant does not prove a manifest injustice by a preponderance of the evidence, the trial court has discretion to grant or deny the motion to withdraw. *Id.* Appellate review of a trial court's denial of a motion to withdraw a guilty plea is for an abuse of discretion. *Id.*

■ The first difficulty Graham would have had on direct appeal is that he did not file a written, verified motion to withdraw his guilty plea. Rather, he orally moved at his sentencing hearing to withdraw the plea. Such a motion does not comply with the mandates of Indiana Code Section 35–35–1–4(b); that fact alone may have been sufficient for this court to have rejected Graham's claim on direct appeal, had it been raised at that time. *See id.*

■ Moreover, even if a written motion had been filed, an appellate claim regarding that motion is unlikely to have been successful. Graham contends that he protested his innocence at his sentencing hearing. It is true that "[a] judge may not accept a plea of guilty when the defendant both pleads guilty and maintains his innocence at the same time." *Id.* This rule applies, however, only to defendants who actually plead guilty and maintain their innocence simultaneously. *Id.* It does not apply to defendants who plead guilty, and then later, during a presentence interview and/or at sentencing, protest their inno-

---

4. Such a claim could have been raised on direct appeal, despite Graham's guilty plea.

*See Brightman v. State,* 758 N.E.2d 41, 44 (Ind.2001).

cence. *See Harris v. State*, 671 N.E.2d 864, 869 (Ind.Ct.App.1996).

In support of his argument, Graham cites a case in which this court stated:

> If, before sentencing, guilt is denied or there is an apparent protestation of innocence, the court is obliged to enter into a meaningful dialogue with the accused to clearly establish the validity of the plea. Should the court resolve any inconsistency and receive from the defendant his renewed admission of guilt, the acceptance of the plea and judgment of conviction may stand and sentence be imposed. However, if the inconsistency is not resolved, the court must reject the plea and set the course for trial or further proceedings.

*Cross v. State*, 521 N.E.2d 360, 362 (Ind. Ct.App.1988) (citations omitted). Graham contends that he falls under the rule announced in *Cross*, in that he pled guilty, then protested his innocence before he was sentenced, and the trial court did not resolve the inconsistency between his earlier guilty plea and later statement of innocence.

▌ However, our supreme court effectively overruled *Cross* by the issuance of two opinions that directly conflict with *Cross*. *See Mayberry v. State*, 542 N.E.2d 1359, 1360–61 (Ind.Ct.App.1989) (citing *Hatcher v. State*, 540 N.E.2d 1241 (Ind. 1989), and *Moredock v. State*, 540 N.E.2d 1230 (1989)), *trans. denied*. The current state of the law is that, at least in non-death penalty cases, a trial court in its discretion may refuse to set aside a guilty plea when a defendant maintains his innocence in a hearing held after the guilty plea hearing but before sentence is imposed. *Bewley v. State*, 572 N.E.2d 541, 544 (Ind.Ct.App.1991); *see also Ford v. State*, 618 N.E.2d 36, 39 (Ind.Ct.App.1993).

Here, in fact, it is not even clear that Graham ever has truly maintained his innocence in this case. That is, he did not,

prior to sentencing, deny the truth of what he admitted to at the guilty plea hearing; namely, that he was knowingly present in a home where methamphetamine was being manufactured and allowed Leone to use his truck to drive to buy more pills to manufacture more methamphetamine. To the extent Graham told the probation officer compiling the presentence investigation report that he was "not guilty," he did not explain *why* he was not guilty. App. p. 45. Rather, it appears that he merely was challenging the sufficiency of his admissions at the guilty plea hearing as a factual basis to support his conviction for Class B felony dealing in a narcotic drug. We have already rejected that argument.

We cannot conclude that Graham's motion to withdraw his guilty plea presented a situation in which it had to be granted. The trial court, instead, had the discretion to deny it, and we would have reviewed that decision for an abuse of discretion, which is a challenging standard for an appellant to meet. That being the case, we cannot say appellate counsel was ineffective for not raising the issue of the motion to withdraw on direct appeal, and instead focusing on the appropriateness of Graham's maximum sentence.

### III. Illusory Guilty Plea

▌ The final issue we address today is whether the PCR court properly rejected Graham's claim that his guilty plea was illusory and involuntary. Graham contends that his guilty plea was motivated by the improper threat of a thirty-year habitual offender enhancement to his sentence if he did not plead guilty. A plea bargain motivated by an improper threat is deemed illusory and a denial of substantive rights. *Champion v. State*, 478 N.E.2d 681, 683 (Ind.1985) (citing *Gibson v. State*, 456 N.E.2d 1006, 1009 (Ind.1983)). The State must possess, at the moment a guilty plea is entered, the power to carry

out any threat that was a factor in obtaining the plea agreement. *Daniels v. State,* 531 N.E.2d 1173, 1174 (Ind.1988). " '[A] threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary.' " *Munger v. State,* 420 N.E.2d 1380, 1387 (Ind.Ct.App.1981) (quoting *Lassiter v. Turner,* 423 F.2d 897, 900 (4th Cir.1970), *cert. denied* ).

Here, Graham was charged by the State with Class B felony dealing in a narcotic drug under Indiana Code Section 35-48-4-1. The State's general habitual offender charging information alleged that Graham had prior felony convictions for resisting law enforcement and possession of a controlled substance, and two prior felony convictions for possession of marijuana. The State dismissed the habitual offender allegation in exchange for Graham's plea.

The general habitual offender statute prohibits the State from seeking a sentence enhancement for an offense under Indiana Code Chapter 35-48-4, if the offense is not listed in Indiana Code Section 35-50-2-2(b)(4) (i.e., "crimes of violence" for purposes of sentence suspension), and the defendant does not have more than one prior conviction for dealing in cocaine, a legend or narcotic drug, or a schedule I, II, III, IV, or V controlled substance. I.C. § 35-50-2-8(b)(3). On appeal, the State concedes that as charged, Graham's sentence for Class B felony dealing in a narcotic drug could not have been enhanced under the general habitual offender statute.[5] Thus, there appears to be no question that the State's threat of a general habitual offender enhancement of Graham's sentence was not capable of being fulfilled.

The issue, therefore, is the impact of that improper threat on the validity of Graham's guilty plea. In *Nash v. State,* 429 N.E.2d 666, 672 (Ind.Ct.App.1981), this court indicated that if the improper threat of an habitual offender sentence enhancement "played a significant part in the plea negotiations," then any resulting plea is illusory, even if that threat was not the "main" motivation for the plea. More recently, our supreme court, in *Segura v. State,* 749 N.E.2d 496 (Ind.2001), has seemed to place a higher burden upon defendants who are claiming that an improper punitive threat compelled their guilty plea before that plea may be set aside.

In *Segura,* a defendant pled guilty to dealing in cocaine and then sought in postconviction proceedings to set aside that plea on the basis that his trial attorney had been ineffective for failing to advise him of the possibility of deportation if he pled guilty. Our supreme court undertook an exhaustive review of precedents on the subject of the validity of guilty pleas, where a defendant has received incorrect advice as to penal consequences of a plea. As the *Segura* court noted, such incorrect advice could take the form of either "intimidation by an exaggerated penalty or enticement by an understated maximum exposure...." *Id.* at 504.

With respect to such claims, the court stated:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been

**5.** It does appear Graham's sentence could have been enhanced under the habitual substance offender statute, Indiana Code Section 35-50-2-10, had the State filed such a charge. The maximum enhancement under that statute would have been eight years, as opposed to thirty years under the general habitual offender statute.

influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Id.* at 504–05.

The court went on to hold that a defendant seeking to set aside a guilty plea on the basis of incorrect advice as to penal consequences need not establish his or her actual innocence, or in other words need not establish that the ultimate result of a full trial and sentencing would have been more favorable than the result of the guilty plea. *Id.* at 507. Rather, the court held:

> We believe a showing of prejudice from incorrect advice as to the penal consequences is to be judged by an objective standard, i.e., there must be a showing of facts that support a reasonable probability that the hypothetical reasonable defendant would have elected to go to trial if properly advised.... [A] petitioner may be entitled to relief if there is an objectively credible factual and legal basis from which it may be concluded that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."
>
> .... [F]or claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Segura v. State,* 749 N.E.2d 496, 507 (Ind. 2001) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985)). Relying upon *Segura,* this court later held, "when an error in advice supports a claim of intimidation by exaggerated penalty, a petitioner must establish specific facts that lead to the conclusion that a reasonable defendant would not have entered a plea had the error in advice not been committed." *Willoughby v. State,* 792 N.E.2d 560, 564 (Ind.Ct.App.2003).

Although *Segura* and *Willoughby* dealt specifically with ineffective assistance of counsel claims, we believe the standard they set out is equally applicable to straightforward claims of an involuntary or illusory plea. *Segura* expressly refers to both ineffective assistance and involuntary plea claims. *See Segura,* 749 N.E.2d at 504; *see also Willoughby,* 792 N.E.2d at 563 ("it is immaterial whether [a defendant's] claim is of an involuntary plea or ineffective assistance of counsel."). Graham's particular claim on this point seems to be a hybrid of ineffective assistance and an outright involuntary or illusory plea. There is, however, evidence that trial counsel did advise Graham that he did not believe an habitual offender enhancement of his sentence would be upheld on appeal. On the other hand, the trial court denied Graham's attorney's motion to dismiss the habitual offender information, and the State did not dismiss it of its own accord until the dismissal was made part of Graham's plea agreement. Ultimately, there is evidence here that the trial court itself advised Graham at the guilty plea hearing that he was facing a possible maximum fifty-year sentence if he did not plead guilty. Such an advisement arguably would overshadow any advice Graham had received from trial counsel regarding the validity of the habitual offender enhancement.

Graham testified at the PCR hearing that he was coerced into pleading guilty because of the improper habitual offender threat. Under *Segura*, such a self-serving statement is not enough to warrant setting aside his guilty plea. Instead, *Segura* plainly indicates that the PCR court was required to make a factual determination as to whether an objectively reasonable defendant in Graham's situation would not have pled guilty if he was properly informed as to the potential penal consequences he was facing if he did not plead guilty. *See Segura*, 749 N.E.2d at 504–05, 507. However, the PCR court here made no such finding. It instead rejected Graham's argument on this issue on the clearly erroneous basis that he was validly facing an habitual offender enhancement of his sentence if he did not plead guilty.

We reiterate that we cannot affirm the PCR court's ruling on any basis supported by the record, and we are limited to affirming on a basis supported by the PCR court's express findings. *See Lile*, 671 N.E.2d at 1192. We cannot affirm the PCR court's rejection of Graham's illusory or involuntary guilty plea claim, where the only finding supporting that rejection is clearly erroneous. On the other hand, Graham has not definitively established that he is entitled to relief and the setting aside of his guilty plea. Under the circumstances, we conclude we have no choice but to remand to the PCR court for further proceedings to consider whether there exist facts that meet the *Segura* standard for setting aside a guilty plea based on the clearly improper threat of an habitual offender sentence enhancement.

### Conclusion

Graham failed to meet his burden of establishing that he was entitled to post-conviction relief on his claims of an inadequate factual basis or ineffective assistance of appellate counsel. The PCR court properly rejected those claims. We affirm the rejection of those claims, as well as of Graham's freestanding claims of fundamental error. However, the PCR court's findings do not support its rejection of Graham's claim that his plea was illusory or involuntary. We remand for a new PCR hearing to address that question, as well as the question of the effectiveness of his trial counsel on the grounds raised in Graham's PCR petition, should Graham resubmit his subpoena request for his trial counsel to appear at the new hearing. We additionally reiterate that should the PCR court on remand rely on parts of the original trial record, it should make those records part of the current PCR record as well.

Affirmed in part and remanded in part.

BAKER, J., and VAIDIK, J., concur.