## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 22 2016, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Curtis Bacon,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

December 22, 2016

Court of Appeals Case No.
79A02-1604-PC-789

Appeal from the Tippecanoe
Superior Court 1

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1401-PC-001

**Mathias, Judge.**

[1] In 2011, Curtis Bacon ("Bacon") was convicted in Tippecanoe Superior Court of Class B felony aggravated battery, Class C felony criminal recklessness, and

Class C felony carrying a handgun without a license. He also pleaded guilty to the sentencing enhancement of unlawful use of a firearm. The trial court sentenced Bacon to an aggregate term of twenty-seven years of incarceration. After his convictions and sentence were affirmed on appeal, Bacon filed a petition for post-conviction relief. The post-conviction court denied this petition, and Bacon appeals and presents one issue: whether the post-conviction court clearly erred in concluding that Bacon's appellate counsel was not constitutionally ineffective for failing to present a claim of double jeopardy on direct appeal.

[2] We affirm.

## Facts and Procedural History

[3] The facts underlying Bacon's convictions were set forth by this court in Bacon's direct appeal as follows:

> On the night of December 4, 2010, Nick's Nightclub in West Lafayette, Indiana, hosted a party attended by over two hundred people. At approximately 1:00 a.m. on December 5, 2010, a group which included Dion Parker, Drew Harris, Clarence Stephens, and Antwain Harrison arrived at the party.
>
> A separate group consisting of Bacon, Matthew Russ, Quinten Russ, Jarrett Powell, Brandon Michael, Da'ion Nunley, Dominique Carter, and several others were also at the party. Everyone in this group brought weapons to West Lafayette but left the weapons in their vehicles when they entered the club.
>
> While the song "Get Money" was playing, Harrison had his money out joking around with his friends. Stephens noticed that some people from Bacon's group were looking at Harrison as

though they planned to "do something to him," and Stephens told Harrison to put his money away, which Harrison did. One of the individuals in Bacon's group made comments to Stephens, and Stephens felt threatened. At some point, a fight or a number of fights broke out in the club which included altercations between Bacon and those in his group and individuals in Harrison's group. Security guards stopped the music, sprayed mace, and ordered everyone out of the club.

Outside the club, there was confusion and a number of the individuals in Harrison's group were separated from each other. Harrison and Stephens retrieved their guns from their vehicle because of the fight in the club and the feeling that something was about to happen and then attempted to find others in their group. West Lafayette police officers arrived at the club and observed one to two hundred people gathered outside.

Bacon, Russ, and others in their group noticed Harrison and Stephens, approached them, and "jumped them." Bacon pulled his gun and pointed it at either Harrison or Stephens, and Russ and the others "told [Bacon] no, be cool there is security. . . ." Bacon stated "watch out, let me shoot him, I'm going to have to shoot him." Bacon eventually lowered the gun but continued to hold it in his hand. As Carter approached Bacon in the parking lot, he heard Bacon state, "Bro, I ain't playing with them." Russ observed Bacon "aim" his handgun at Harrison and shoot at him several times in rapid succession. Bacon fired six shots, dropped his gun, and then fled. Bacon did not have a gun permit. Harrison suffered a gunshot wound to the back of his neck. Harrison's head jerked, he fell to the ground, blood and fluids began to drain from the area around his head, and he lost consciousness. Stephens fired two shots in the direction of the person who shot Harrison. Police quickly arrived, and ordered Stephens to place his gun on the ground. Harrison was transported by ambulance to the hospital. Due to the gunshot injury, Harrison is considered "a C4 quadriplegic," he cannot move his arms and legs, he is wheelchair bound, he does not have control of his bowels or bladder, he needs to be rotated

frequently to prevent bed sores, and he experiences significant discomfort.

Powell was subsequently interviewed by police detectives, and the interview was recorded. During the interview, Powell stated that he "heard people saying, don't kill him, don't kill him, don't kill him, some dude was saying don't kill him" and that he observed Bacon aim his gun and shoot it. During an interview with police, Bacon stated that he had fired his gun but that he was not aiming and that Harrison was shot accidentally.

*Bacon v. State*, No. 79A02-1112-CR-1163, 2012 WL 4470997 (Ind. Ct. App. Sept. 28, 2012) (transcript citations omitted), *trans. denied*.[1]

[4] As a result of the shootings, the State charged Bacon with Count I, Class B felony aggravated battery; Count II, Class C felony battery committed by means of a deadly weapon; Count III, Class C felony battery resulting in serious bodily injury; Count IV, Class C felony criminal recklessness committed by means of a deadly weapon resulting in serious bodily injury; Count V, Class C felony criminal recklessness committed while armed with a deadly weapon; Count VI, Class A misdemeanor carrying a handgun without a license; Count VII, Class C felony carrying a handgun without a license with a prior conviction; and Count VIII, unlawful use of a firearm, a sentencing enhancement.

[5] The jury found Bacon guilty on Counts I–VI, and Bacon then pled guilty on Counts VII and VIII. The trial court "merged" Counts II, III, and IV with

---

[1] Available at: http://www.in.gov/judiciary/opinions/pdf/09281202ebb.pdf.

Count I and merged Count VI with Count VII. The court then sentenced Bacon to fourteen years for his conviction in Count I, four years for his conviction in Count V, four years for his conviction in Count VII, and five years for the sentencing enhancement in Count VIII. The court ordered the sentences to be served consecutively, for an aggregate sentence of twenty-seven years.

[6] Bacon appealed and argued that the trial court abused its discretion in permitting the State to impeach a witness with a prior statement, that the evidence was insufficient to sustain his conviction for aggravated battery as a Class B felony, and that his sentence was inappropriate in light of the nature of the offense and the character of the offender. This court rejected these arguments and affirmed Bacon's convictions and sentence. *Bacon,* No. 79A02-1112-CR-1163, slip op. at 13.

[7] Bacon filed a pro se petition for post-conviction relief on December 6, 2013. On September 17, 2015, Bacon, now represented by the State Public Defender's Office, filed an amended petition for post-conviction relief, which presented one issue for the court's consideration: whether Bacon's appellate counsel was ineffective for failing to present a double jeopardy argument on appeal. The post-conviction court held an evidentiary hearing on the petition on January 15, 2016, and issued an order denying Bacon's petition on March 16, 2016. Bacon now appeals.

## Post-Conviction Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Thus, on appeal from the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative

evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

## Ineffective Assistance of Appellate Counsel

[10] Bacon claims that his appellate counsel was constitutionally ineffective. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel. *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007). That is, the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for the deficient performance of counsel the result of the proceeding would have been different. *Id.*

[11] We must consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance and must be "particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006). Moreover, ineffective assistance is rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id.*

[12] Our supreme court has noted that claims of ineffective assistance of appellate counsel generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* at 1195. To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id.* To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id.* If the analysis under this test demonstrates deficient performance, then we examine whether the issues which appellate counsel failed to raise would have been clearly more likely to result in reversal or an order for a new trial. *Id.*

## Double Jeopardy

[13] Bacon contends that his appellate counsel should have raised the issue of double jeopardy on direct appeal. Specifically, he argues that his convictions on Count I and Count V constituted double jeopardy under the *Richardson* actual evidence test.

[14] Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." We analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to our supreme court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, the court held that "two or more offenses are the 'same offense' in violation of

Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original).

[15] Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all the essential elements of a second challenged offense. *Singh v. State*, 40 N.E.3d 981, 986 (Ind. Ct. App. 2015), *trans. denied*, (citing *Richardson*, 717 N.E.2d at 53). The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id*. (citing *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)).

[16] Application of the actual evidence test requires us to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. *Id*. (citing *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008)). Accordingly, when reviewing a claim under the actual evidence test, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id*. (citing *Lee*, 892 N.E.2d at 1234).

[17] Bacon claims that the same evidence used to support his conviction for criminal recklessness in Count V was the same as the evidence used to support his

conviction for aggravated battery in Count I and for criminal recklessness in Count IV, which was merged into Count I due to double jeopardy concerns.

[18] Count I alleged that Bacon "did knowingly or intentionally inflict injury on a person, to wit: Antwain Harrison, that created a substantial risk of death or caused serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ."[2] Direct Appeal App. p. 26. Count IV alleged that Bacon "did recklessly, knowingly, or intentionally inflict serious bodily injury on another person, to wit: Antwain Harrison, committed by means of a deadly weapon, to wit: a handgun."[3] *Id*. at 29. Thus, Count IV, like Count I, was based on the act of shooting Harrison.

---

[2] This tracks the language of the statute which, at the time of Bacon's offenses, defined the crime of aggravated battery, and which provided:

> A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:
>     (1) serious permanent disfigurement;
>     (2) protracted loss or impairment of the function of a bodily member or organ; or
>     (3) the loss of a fetus;
> commits aggravated battery, a Class B felony.

Ind. Code § 35-42-2-1.5 (1997).

[3] This too tracks the language of the relevant portion of the statute defining the crime of criminal recklessness, which provided in relevant part:

> (d) A person who recklessly, knowingly, or intentionally:
>     (1) inflicts serious bodily injury on another person; or
>     (2) performs hazing that results in serious bodily injury to a person;
> commits criminal recklessness, a Class D felony. However, the offense is a Class C felony if committed by means of a deadly weapon.

Ind. Code § 35-42-2-2(d) (2006).

[19] Count V alleged that Bacon "did recklessly, knowingly, or intentionally perform an act that created a substantial risk of bodily injury to another person, and that Bacon committed said offense while shooting a firearm into a building or other place where people were likely to gather, to wit: Nick's Bar and/or parking lot for Nick's Bar."[4] *Id.* at 30. Count V made no mention of Harrison and was based on the act of shooting into the crowd in the parking lot.

[20] Based upon the charging information, it is apparent that the State based Counts I and IV on Bacon's act of shooting Harrison and seriously injuring him. In contrast, Count V alleged that Bacon recklessly created a substantial risk of bodily injury to *any* person by shooting a firearm into the parking lot at the bar, which was a place where people were likely to gather, and in fact had gathered.

[21] The trial court merged Count IV into Count I because both were supported by the same evidence, i.e., Bacon shooting Harrison and seriously injuring him. Bacon now claims that the trial court should have also merged Count V with

---

[4] This tracks the relevant portion of I.C. § 35-42-2-2, as it provided at the time of Bacon's offenses:

> (b) A *person who recklessly, knowingly, or intentionally performs:*
>     *(1) an act that creates a substantial risk of bodily injury to another person;* or
>     (2) hazing;
> commits criminal recklessness. Except as provided in subsection (c), criminal recklessness is a Class B misdemeanor.
> (c) The offense of criminal recklessness as defined in subsection (b) is:
>
> * * *
>
>     *(3) a Class C felony if:*
>         *(A) it is committed by shooting a firearm into an inhabited dwelling or other building or place where people are likely to gather*[.].

I.C. § 35-42-2-2(b), (c) (2006) (emphases added).

Count I and that his appellate counsel was ineffective for failing to present this claim of error on appeal. Bacon does not claim that, as charged, Count V was based on the same evidence as Count I or Count IV. To the contrary, as set forth above, they were based on different allegations, one based on shooting at Harrison, and the other based on shooting at a place where people where likely to gather. Instead, Bacon bases his claim on the trial court's final jury instruction regarding Count V, which, unlike the charging information, referred to Harrison as the victim.

[22]   The trial court's final instruction on Count V provided:

> The crime of criminal recklessness is defined by law as follows: A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a Class B misdemeanor. The offense is a Class D felony if it is committed while armed with a deadly weapon. The offense is a Class C felony if it is committed by shooting a firearm into an inhabited dwelling or other building or place where people are likely to gather, to wit: Nick's Bar and or the parking lot for Nick's Bar.
>
> Before you may convict the Defendant of criminal recklessness as alleged in Count V, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant
>
> 2. recklessly, knowingly or intentionally
>
> 3. performed an act that created a substantial risk of bodily injury *to Antwain Harrison.*
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty of Criminal Recklessness.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of criminal recklessness, a Class B misdemeanor.

If you further find that the state proved beyond a reasonable doubt that the offense was committed while the Defendant was armed with a deadly weapon, you should find the Defendant guilty of criminal recklessness, a Class D felony.

If you further find that the state proved beyond a reasonable doubt that the offense was committed by shooting a firearm into an inhabited dwelling or other building or place where people were likely to gather, you should find the Defendant guilty of criminal recklessness (Committed While armed with a Deadly Weapon), as charged in Count V, a Class C felony.

Direct Appeal App. p. 133.

[23] Because this instruction provides that the State was required to prove that Bacon's act created a substantial risk of serious bodily injury to Harrison, Bacon claims that his conviction on Count V was necessarily based on the same evidence used to support his convictions on Counts I and IV, which were also based on the evidence of Bacon shooting Harrison. Although this is a colorable argument, we are not convinced that it was significant and obvious from the face of the record or clearly stronger than the issues presented by Bacon's appellate counsel on direct appeal.

[24] First, Count V, as charged, did not mention Harrison. Instead, it alleged that Bacon created a substantial risk of bodily injury to another person by shooting a firearm into the parking lot at the bar, which was crowded with people. The trial court's preliminary instruction regarding Count V quoted the language of

the information and did not mention Harrison. In addition to the final instruction which mentioned Harrison, the trial court gave another final instruction quoting the language of the charging information, which did not mention Harrison. In addition, during the State's closing argument, the prosecuting attorney argued that the evidence supporting Count V was not that Bacon shot Harrison, but that he fired his handgun at the crowded parking lot:

> Mr. Bacon performed an act that created substantial risk of bodily injury to another person, he fired his handgun across the parking lot six (6) times and it has to be either in a dwelling, building, or in a place where other people are likely to gather; clearly a parking lot outside of a tavern people are likely to gather after.

Trial Tr. p. 713.[5]

[25] Furthermore, the verdict form used by the jury on Count V made no mention of Harrison as the intended victim and the jury verdict on Count V provided simply, "We, the jury, find the defendant, Curtis Lee Bacon, GUILTY of Information of Criminal Recklessness by shooting a firearm into a building or other place where people are likely to gather, a Class C Felony." Direct Appeal App. p. 97.

---

[5] We reject Bacon's argument that the prosecuting attorney did not clearly differentiate between the evidence supporting the different counts and that the post-conviction court therefore clearly erred in concluding otherwise.

[26]    Thus, it appears that the State would have had a strong counter argument to any double jeopardy claim Bacon now argues should have been presented on direct appeal. That is, the evidentiary facts supporting Count I (and Count IV, which was merged into Count I) were that Bacon shot *Harrison*, causing serious bodily injury to Harrison, whereas the evidentiary facts supporting Count V were that Bacon also fired his weapon *into the crowd* that had gathered in the parking lot, thereby creating a risk of serious bodily injury to any other person. It therefore appears that Count V required the jury to find a distinct evidentiary fact: that Bacon fired his weapon into a building or other place where people were likely to gather, i.e., the parking lot of the bar.[6]

[27]    Given these facts and circumstances, we cannot say that the double jeopardy argument regarding Count V was significant and obvious from the face of the record. Even if it was, given the strength of the argument that Count V was based on other actual evidence, we reject Bacon's claim that his appellate counsel should have realized the double jeopardy issue was clearly stronger than the issues he raised in Bacon's direct appeal. Indeed, Bacon's appellate counsel testified at the post-conviction hearing that, because the charging information, the preliminary instructions, and the verdict form all informed the

---

[6] We find Bacon's citation to the cases of *Stewart v. State*, 866 N.E.2d 858 (Ind. Ct. App. 2007), and *Rutherford v. State*, 866 N.E.2d 867 (Ind. Ct. App. 2007), to be unavailing. In those cases, which involved the same shooting, the prosecuting attorney made no attempt to "split hairs" regarding the separate shots supporting the separate convictions for attempted battery and criminal recklessness. *See Stewart,* 866 N.E.2d at 864-65; *Rutherford*, 866 N.E.2d at 872. Moreover, in those cases, the record was unclear as to whether the defendants fired more than one shot toward the vehicle containing the victims. *Id*. This is in contrast to the facts here, where there was clear evidence that Bacon fired six separate shots, only one of which hit Harrison.

jury that Count V was based on Bacon shooting at the crowd, not Harrison, he did not perceive there to be a strong double jeopardy argument.

[28] Because a claim of double jeopardy was not clearly stronger than the issues Bacon's appellate counsel did present, we cannot say that Bacon's appellate counsel was ineffective.[7]

[29] Affirmed.

Robb, J., and Brown, J., concur.

---

[7] Because of our conclusion, we find it unnecessary to directly address Bacon's claims that the post-conviction court's findings regarding Count V were clearly erroneous.