# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 20 2018, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Marzono R. Shelly
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marzono R. Shelly, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent.* | July 20, 2018 <br><br> Court of Appeals Case No. 46A03-1702-PC-274 <br><br> Appeal from the LaPorte Circuit Court <br><br> The Honorable Thomas J. Alevizos, Judge <br><br> Trial Court Cause No. 46C01-1606-PC-6 |

**Mathias, Judge.**

[1] Marzono R. Shelly ("Shelly") appeals the LaPorte Circuit Court's denial of his petition for post-conviction relief. Concluding that Shelly has failed to raise any issues that are available for post-conviction review, we affirm.

## Facts and Procedural History

[2] The following facts and procedural history of Shelly's case are taken from the unpublished memorandum decision of his direct appeal:

> In 2012, seventy-three-year-old Charles Harper lived in a house in Michigan City with his friend, Vincent Fayson. On January 19, 2012, Shelly arrived at Harper's house and asked Fayson if Harper was available. Harper asked Shelly to come inside and gave Fayson some money so that he could leave the house and go out with his friends. Fayson left the house sometime around eight o'clock at night.
>
> Around 10:30 p.m., Fayson, still out with his friends, called Harper and received no answer. When Fayson returned to Harper's house later that night, Harper's truck was gone, but the lights and television were still on and the door to the house was unlocked. Fayson entered the house and noticed that a chair was propped underneath the doorknob to the kitchen door. Fayson removed the chair, opened the door, and found Harper lying in a pool of blood.
>
> Harper had been shot five times, including once in the back of the head and once in the face. Fayson contacted the police and informed them that Shelly was the last person he had seen with Harper. Later that evening, officers discovered Harper's truck parked at an apartment complex. The next morning, officers knocked on the door of an apartment at the complex belonging to Doris Parr, who invited them inside. The officers soon discovered Shelly hiding in the furnace room and arrested him.

Officers then spoke with a woman who was in Parr's apartment when Shelly was arrested. She informed them that Shelly had been carrying a twelve-pack box of Icehouse beer and that he had attempted to hide the box when police arrived. After Parr consented to a search of her apartment, the officers found the Icehouse box hidden underneath [Shelly's] jacket in the furnace room. They searched the box and found, among other things, Harper's wallet, keys, two handguns, and ammunition.

The State charged Shelly with murder, felony murder, class A felony robbery, and class B felony serious violent felon in possession of a firearm. The State later requested an habitual offender sentence enhancement. Shelly filed a motion to suppress the evidence found inside the Icehouse box, which the trial court denied. Shelly also filed a motion asking the trial court to declare Jury Rule 20(a)(8), which allows jurors and alternates to discuss the evidence amongst themselves during recesses prior to the commencement of deliberations, unconstitutional. The trial court denied this motion as well.

During the jury selection process, one of the prospective jurors, Gorski, informed the trial court that he believed one of [Shelly's] tattoos signified that he had previously murdered someone. Gorski said that he had shared these thoughts with other prospective jurors.

Shelly moved for a mistrial. The trial court denied the motion, finding that any taint could be cured by individually questioning all of the prospective jurors. When questioned, only two prospective jurors indicated that they had discussed [Shelly's] tattoo with Gorski. Both prospective jurors, along with Gorski, were dismissed. No other prospective juror indicated that they had participated in or overheard such discussions and the trial court admonished all that remained that they must not speak about the case with anyone.

Following jury selection, Shelly moved to discharge the jury panel, alleging that the prosecutor had made statements that improperly informed the jury of the facts of the case, misinformed the jury as to the elements of the crimes charged, and improperly commented upon [Shelly's] exercise of his right against self-incrimination. The trial court denied this motion as well.

On August 12, 2013, Shelly was tried before a jury. At the close of evidence, Shelly moved for a mistrial, alleging that the State had failed to disclose evidence of Harper's past criminal activity, about which Shelly had just learned. The trial court denied the motion, finding that there was not a reasonable probability that the evidence would have affected the outcome of the trial. The trial court also denied [Shelly's] request to instruct the jury on involuntary manslaughter.

The jury found Shelly guilty on all counts, and the trial court later found him to be an habitual offender. The trial court merged [Shelly's] conviction for felony murder with his conviction for murder. Shelly was sentenced to sixty-five years for the murder conviction, thirty years for the class A felony robbery conviction, ten years for the class B felony violent felon in possession of a firearm conviction, and thirty years for the habitual offender finding. With the exception of the class B felony violent felon in possession of a firearm sentence, which was to be served concurrently to the murder sentence, the trial court ordered all sentences to be served consecutively, resulting in a total executed sentence of 125 years.

*Shelly v. State*, 46A03-1404-CR-133, 2015 WL 1228314, Slip op. at *1–*2 (Ind. Ct. App. March 17, 2015).

[3] On direct appeal, our court held that Shelly's merged convictions for murder and felony murder, and his conviction for class A felony robbery violated double jeopardy. This court, therefore, instructed the trial court to vacate the felony murder the conviction and remanded the case to enter a judgment for robbery, as a class C felony. On remand, the trial court was ordered to revise his sentence accordingly. As to the remaining convictions, this court affirmed. *See id.* at *11.

[4] On June 7, 2016, Shelly filed a *pro se* petition for post-conviction relief. Shelly filed an amended *pro se* petition for post-conviction relief on November 14, 2016. In his amended petition, Shelly raised numerous arguments which we summarize as: (1) whether the trial court abused its discretion by allowing the State to amend the habitual offender charge; (2) whether the possession of a firearm by a violent offender and the habitual offender enhancement violated double jeopardy; (3) whether he was prejudiced by an allegedly improper jury instruction regarding motive; (4) whether the trial court erred by not giving an involuntary manslaughter instruction to the jury; (5) whether certain jury instructions were ambiguous; (6) whether the trial court abused its discretion in denying a motion for mistrial; and (7) whether the trial court abused its discretion in denying a motion for judgment on the evidence. *See* Appellant's Am. App. pp. 37–43.

[5] At the post-conviction hearing on January 10, 2017, the post-conviction court made the following findings:

Petitioner elected not to introduce any evidence other than the transcript of his criminal trial. The State argued that Petitioner's petition should be barred by laches or by waiver.

"The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. When an issue is known and available but not raised on direct appeal, it is waived for post-conviction proceedings."

Petitioner has elected not to present any evidence as to whether any of his allegations are result of newly found evidence or that which was not available to him at the time of trial or appeal. However, the Court, having read all the accusations of error in his amended petition, including 8(a), 8(b), 9(a), 10(a), 10(b), 11(a), 11(b), 12(a), 12(b), 13(a), 13(b), 14(a), and 14(b), finds that nothing in those allegations indicate that the Petitioner or his counsel were not aware of these matters at the time of the trial or the appeal.

Therefore, as all of the issues presented in Petitioner's amended post-conviction relief petition were known to the Petitioner at the time of his trial, or at the time of his original appeal, these issues have been waived.

Accordingly, Petitioner's post-conviction relief petition should be DENIED.

*Id.* at 46. (internal citations omitted). Shelly now appeals.

# Discussion and Decision

[6] The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, we neither reweigh evidence nor judge the credibility of witness. *Id*. Therefore, to prevail, Shelly must show that the evidence, as a whole, leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*.

[7] Where, as here, the post-conviction court made specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id*. Accordingly, we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id*.

[8] "It is . . . well-settled that, because a post-conviction relief proceeding is not a substitute for direct appeal but rather a process for raising issues unknown or not available at trial, an issue known and available but not raised on direct appeal may not be raised in post-conviction proceedings." *See Mills v. State*, 868

N.E.2d 446, 452 (Ind. 2007) (quoting *Collins v. State*, 817 N.E.2d 230, 232 (Ind. 2004)). The issues Shelly raises in his petition for post-conviction relief, which are listed above, were known and available on direct appeal.[1]

[9] Shelly did not present any evidence, but merely asked the post-conviction court to take notice of the trial transcript and his motion and make a decision based on the court's review of the transcript. *See* PCR Tr. p. 3. Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002), *reh'g denied*. These issues were available at the time of Shelly's direct appeal, and therefore, may not be raised in post-conviction proceedings. *See Mills*, 868 N.E.2d at 452; Ind. Post-Conviction Rule 1(1)(b) (stating post-conviction relief "is not a substitute for a direct appeal from the conviction and/or sentence").

[10] For these reasons, we conclude that the post-conviction court did not err in denying Shelly post-conviction relief.

[11] Affirmed.

Riley, J., and May, J., concur.

---

[1] Shelly argues that the post-conviction court erred when it denied his relief based on the doctrine of laches. However, it is obvious on the face of the trial court's judgment that the court did not rely on laches when it denied Shelly's petition.